Robert D. HARMAN and Dorothy E. Harman, on Behalf of Christopher HARMAN, a minor, and In Their Own Right, Appellants,

v.

Bishnu C. BORAH, M.D. and Children's Hospital of Philadelphia and Judy Bernbaum, M.D., and Jeanne Parks, M.D., Appellees.

Superior Court of Pennsylvania.

Argued July 14, 1998.

Filed Oct. 6, 1998.

Reargument Denied Dec. 15, 1998.

Derek R. Layser, Philadelphia, or appellants.

Allan H. Starr, Philadelphia, for Children's Hosp. and Parks, appellees.

Paul E. Peel, Plymouth Meeting, for Bernbaum, appellee.

Sheila A. Haren, Philadelphia, for Borah, appellee.

Before KELLY and JOYCE, JJ., and CERCONE, President Judge Emeritus.

JOYCE, Judge.

Appellants, Robert D. Harman, Dorothy Harman, and their minor son, Christopher, appeal from the judgment entered on March 3, 1997. For the following reasons, we vacate the judgment entered in favor of CHOP,

Dr. Parks and Dr. Bernbaum and remand for further proceedings consistent with this Opinion. The trial court's order granting summary judgment in favor if Dr. Borah is affirmed. The pertinent facts are as follows.

On January 10, 1986, Mrs. Harman took her then eighteen-month-old son Christopher to the office of Dr. Bishnu C. Borah, to obtain an MMR (measles, mumps and rubella) vaccination. On January 16, 1986, Christopher developed a fever and was again taken to Dr. Borah, who diagnosed left otitis media[1] and prescribed Amoxicillin. On January 19, 1986, Appellants took Christopher to the Lower Bucks Hospital emergency room, where he was admitted and diagnosed with left otitis media and encephalitis.[2] Dr. Borah supervised and managed Christopher's care at Lower Bucks Hospital. On January 19, 1986, Christopher was transferred to Children's Hospital of Philadelphia (CHOP), where he was treated for encephalitis by Dr. Jeanne Parks and Dr. Judy Bernbaum. He remained hospitalized until February 12, 1986.

As a result of the encephalitis, Christopher suffered permanent neurological damage, which produced cognitive and physical impairment. On January 11, 1988, Appellants instituted suit against Merck, Sharp and Dohme Research Laboratories, the manufacturer of the MMR vaccine, and related entities, as well as various employees of Merck, (hereinafter Merck) and Dr. Borah. The complaint alleged that the MMR inoculation caused the encephalitis and subsequent disabilities. Appellants further alleged that the vaccine was in a defective condition when supplied to Dr. Borah and that Merck was liable on theories of, *inter alia,* breach of warranty, strict liability and negligence. Appellants also alleged that Dr. Borah was negligent in administering the vaccine, that Dr. Borah failed to warn of the dangers of the MMR vaccination and that he failed to timely diagnose and treat the encephalitis.

On October 14, 1988, Appellants filed an amended complaint that named CHOP, Dr. Parks, and Dr. Bernbaum, as additional defendants. Appellants alleged, *inter alia,* that CHOP, Dr. Bernbaum, and Dr. Parks were negligent in failing to diagnose and treat Christopher's encephalitis properly with corticosteriods and failing to diagnose his encephalitis as a reaction to the MMR inoculation. Additionally, Appellants alleged that Dr. Parks, an intern at the time Christopher was hospitalized, was negligent in failing to obtain assistance from the consulting pediatrician, Dr. Bernbaum, who did not see Christopher until the morning after his admission to CHOP.

Appellants subsequently petitioned the court to dismiss the complaint without prejudice, which would enable Appellants to file a petition with the United States Court of Federal Claims pursuant to the National Vaccine Injury Compensation Program (Vaccine Act). 42 U.S.C.A. §§ 300aa–300aa–26.[3] The trial court granted Appellants' request on August 24, 1990. Appellants filed a petition under the Vaccine Act and obtained favorable judgments on January 11, 1993 and April 20, 1993. On May 10, 1994, Appellants praeciped to have the complaint reinstated. The case proceeded against Appellees, Dr. Borah, CHOP, Dr. Parks and Dr. Bernbaum.[4]

Prior to trial, Dr. Borah moved for summary judgment, claiming that Appellants' acceptance of the judgment entered by the United States Court of Federal Claims barred any further civil action against Dr. Borah as he was the administrator of the vaccine under the Vaccine Act. The trial court granted Dr. Borah's motion for summary judgment. Trial against the remaining defendants took place in April, 1996. The jury returned a verdict in favor of Appellees. Appellants filed post-trial motions which the

---

1. Otitis media is defined as an inflammation of the middle ear. *Stedman's Medical Dictionary,* 1112 (25 th ed.1990).

2. Encephalitis is defined as inflammation of the brain. *Id.* at 506.

3. The provisions of the Act bar recovery under the program if there is a pending civil action regarding a vaccine-related injury. *See* 42 U.S.C.A. § 300aa–11.

4. Merck and its related entities were thereafter removed from the complaint as defendants.

trial court denied on November 25, 1996.[5] This timely appeal followed.

Appellant presents the following claims for our review: (1) whether the trial court erred in granting Dr. Borah's motion for summary judgment; (2) whether the trial court abused its discretion in refusing to grant a new trial when the court requested to speak off the record with a defense expert; (3) whether the trial court erred in denying Appellant's motion to disqualify a defense expert, Dr. Warren Grover; and (4) whether the trial court erred in permitting Dr. Peter Berman to offer opinion testimony.

▮▮▮ Appellants first challenge the trial court's order granting Dr. Borah's motion for summary judgment.[6]

> In reviewing a grant of summary judgment, an appellate court may disturb the order of the trial court only where there has been an error of law or a manifest abuse of discretion. Nevertheless, the scope of review is plenary and the appellate court shall apply the same standard for judgment as the trial court.... The record is to be viewed in the light most favorable to the nonmoving party, and all doubts as to the presence of a genuine issue of material fact must be resolved against the moving party.

*Albright v. Abington Memorial Hospital*, 548 Pa. 268, 279–280, 696 A.2d 1159, 1165 (1997) (citations omitted). "Summary judgment may be granted only in cases where the right is clear and free from doubt." *Cappelli v. York Operating Co., Inc.*, 711 A.2d 481, 483 (Pa.Super.1998) (*en banc*). A non-moving party must adduce sufficient evidence on an

issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Ertel v. Patriot–News Company*, 544 Pa. 93, 101, 674 A.2d 1038, 1042(1996) *cert. denied*, —— U.S. ——, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). "Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id. See also* Pa.R.C.P. 1035.2(2) (adverse party to a motion for summary judgment must show the existence of facts essential to the cause of action). We will evaluate Appellants' arguments with these principles in mind.

In determining whether any claims against Dr. Borah are barred by The National Childhood Vaccine Injury Act, we must examine various sections of the Act itself. "Statutory interpretation begins with the language of the statute itself." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 557, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990). The Vaccine Act provides for compensation to persons injured as a result of a vaccine, but prohibits recovery if an injured person has a pending civil action. However, the Act recognizes the situation where, as here, a civil action was filed before the effective date of the Act:

> A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under

---

**5.** This order was made final by entry of judgment on March 3, 1997, after the notice of appeal had been filed. However, we will treat this appeal as lying from entry of judgment. *See* Pa.R.A.P. 905(a) (notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof). *See also Snyder Heating Company, Inc. v. Pennsylvania Manufacturers' Association Insurance Company*, 715 A.2d 483, 484 (Pa.Super.1998) (*en banc*). (holding that an appeal lies from entry of final judgment).

**6.** Appellee Dr. Borah asserts that Appellants have waived their right to appeal the trial court's

order granting Dr. Borah's motion for summary judgment because they included this claim in their motion for post-trial relief. *See* note Pa. R.C.P. 227.1 (a motion for post-trial relief may not be filed to orders disposing of, *inter alia*, motions for summary judgment). The order granting Dr. Borah's motion for summary judgment was not appealable until final judgment was entered disposing all claims of all parties. Pa.R.A.P. 341. Appellants properly included their claim against Dr. Borah in a 1925(b) statement as directed by the trial court. We find despite the Appellants' original procedural error, Appellants have properly preserved this claim for our review.

subsection (b) of this section for such injury or death.

42 U.S.C.A. § 300aa–11(a)(5)(A).[7]

The Vaccine Act further provides that before an injured person files a civil action, he or she must file a petition with the United States Court of Federal Claims:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after the effective date of this subpart, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed, in accordance with section 300aa–16 of this title, for compensation under the Program for such injury or death and—
>
> (i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa–12 of this title on such petition, and
>
> (II) such person elects under section 300aa–21(a) of this title to file such an action, or
>
> (III) such person elects to withdraw such petition under section 300aa–21(b) of this title or such petition is considered withdrawn under such section.

*Id.* at 300aa–11(a)(2)(A).

Section 300aa–21 provides the petitioner with a choice of remedies once a petition has been filed. The Vaccine Act also states that if a person elects to accept the judgment awarded by the United States Court of Federal Claims, that person may not bring or maintain a civil action for damages against a vaccine administrator or manufacturer for the vaccine-related injury or death for which the judgment was entered. 42 U.S.C.A. § 300aa–21(a).

After judgment has been entered by the United States Court of Federal Claims or, if an appeal is taken under section 300aa–12(f) of this title, after the appellate court's mandate is issued, the petitioner who filed the petition under section 300aa–11 of this title shall file with the clerk of the United States Court of Federal Claims—

> (1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a civil action for damages for such injury or death, or
>
> (2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a civil action for damages for such injury or death.
>
> ... If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death associated with the administration of a vaccine before the effective date of this part, or is deemed to have accepted the judgment of the court in such an action, such person may not bring or maintain a civil action for damages against a vaccine administrator or manufacturer ·for the vaccine-related injury or death for which the judgment was entered.

*Id.* at § 300aa–21(a).

■ It is evident from the plain language of the statute, that once a petitioner has elected to accept the award from the United States Federal Claims Court that the petitioner is barred from filing a civil action against an administrator of the vaccine for an injury resulting from the administration of a vaccine. *See e.g., Gilbert v. Secretary of the Department of Health and Human Services,* 51 F.3d 254, 257 (Fed.Cir.1995) (holding that a failure to timely reject a judgment awarded by the Court of Federal Claims precluded plaintiff from filing a civil action); and *Flowers v. Secretary of the Department of Health and Human Services,* 49 F.3d 1558, 1560 (Fed.Cir.1995) (petitioner's pending civil action in Ohio state court precluded her from filing a Vaccine Act petition). *But see Schumaker v. Secretary of Dept. of Health and*

---

**7.** The effective date of the Compensation Program is October 1, 1988, but the Act was amended in 1989. Pub.L. No. 101–239, Title VI § 6601(c)(1)–(7), 103 Stat. 2285, 2286 (1989).

Because Appellants' petition was filed after the December 1989 amendments, the amendments apply to Appellants' petition.

*Human Services*, 2 F.3d 1128, 1136 (Fed.Cir. 1993) (holding that a civil action, as defined by the Vaccine Act, does not include civil actions against non-manufacturers and non-administrators of the vaccine).

The National Childhood Vaccine Injury Act represents an effort to provide compensation to those harmed by childhood vaccines outside the framework of traditional tort law. Congress passed the law after hearing testimony 1) describing the critical need for vaccines to protect children from disease, 2) pointing out that vaccines inevitably harm a very small number of the many millions of people who are vaccinated, and 3) expressing dissatisfaction with traditional tort law as a way of compensating those few victims. Injured persons (potential tort plaintiffs) complained about the tort law system's uncertain recoveries, the high cost of litigation, and delays in obtaining compensation. They argued that government had, for all practical purposes, made vaccination obligatory, and thus it had a responsibility to ensure that those injured by vaccines were compensated. Vaccine manufacturers (potential tort defendants) complained about litigation expenses and occasional large recoveries, which caused insurance premiums and vaccine prices to rise, and which ultimately threatened the stability of the vaccine supply.

*Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2 (1st. Cir.1994). Clearly, the complicated structure of the Vaccine Act was designed to afford injured persons an option of either accepting an award from the United States Federal Claims Court or pursuing traditional tort remedies in federal district court or state court.

■ However, Appellants assert that an administrator's subsequent negligent acts in treating an adverse reaction to inoculation are severable from the act of administering the vaccine thereby constituting a viable civil action regardless of Appellant's acceptance of the award under the Vaccine Act. Our research has revealed no Pennsylvania case law addressing the viability of a civil action after an acceptance of an award under the Vaccine Act. The decisions of the federal district courts and courts of appeal, including those of the Third Circuit Court of Appeals while persuasive are not binding on Pennsylvania courts, even when a federal question is involved. *Martin v. Hale Products, Inc.*, 699 A.2d 1283, 1287 (Pa.Super.1997). We nonetheless find the federal authorities instructive.

In *Amendola v. Secretary of the Dept. of Health and Human Services*, 989 F.2d 1180 (Fed.Cir.1993), the court considered whether the negligent act of administering the vaccine was covered under the Vaccine Act and, hence, whether plaintiffs were barred from bringing a civil action against the doctor who administered the vaccine. The *Amendola* court held that the negligent administration of a vaccine that causes injury constitutes a vaccine-related injury and is covered under the Act. *Id.* at 1186. In reaching this result, the court distinguished between an injury resulting from the vaccine's effects and an injury which occurs irrespective of the effects of the vaccine, such as contamination or the doctor dropping the infant while administering the vaccine. *Id. See also* 42 U.S.C.A. § 300aa–33(5) (defining vaccine-related injury or death as a result of one of the vaccines set forth in the Vaccine Injury Table, except the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine.).

In interpreting the plain meaning of the statute, and considering the above authorities, we find that Appellants' action against Dr. Borah is barred by the acceptance of the judgment awarded by the United States Federal Claims Court. 42 U.S.C.A. § 300aa–21. As in *Amendola, supra*, the injuries sustained by Christopher were vaccine-related. Furthermore, Appellants stipulated that all of Christopher's injuries were vaccine-related. Stipulation, filed 11/18/92, at 2. Appellant's expert, Dr. Poser, signed an affidavit stating that the MMR vaccine administered to Christopher Harman was the cause of the post-vaccinal encephalitis. Affidavit, dated August 12, 1990. This affidavit was filed with Appellants' petition with the United States Claims Court. The United States Federal Claims Court awarded Appellants

funds (not to exceed $795,540) sufficient to purchase annuities which would provide compensation for Christopher's unreimbursed medical expenses for life. *Id.* The award also provided compensation for pain and suffering, and impaired earning capacity. *Id.*

 We recognize that under traditional tort remedies, the question of whether a physician's failure to diagnose or treat an existing condition has increased the risk of harm is a jury determination. *Poleri v. Salkind, M.D.,* 453 Pa.Super. 159, 683 A.2d 649, 654 (Pa.Super.1996). "Our courts have recognized that in some instances the causal connection between the care provided by a physician and the resulting injury is not amenable to proof to a reasonable degree of medical certainty." *Id.* Appellants' expert opined that Dr. Borah's subsequent failure to diagnose and treat Christopher's reaction contributed to his injuries. Plaintiff's Complaint, Exhibit A. It is thus Appellants' position that Christopher's injuries from the encephalitis would not have been as severe if corticosteriods were administered during this reaction.

While we agree that the apportioning of the amount of harm caused by the reaction to the vaccine itself and the amount of harm caused by the alleged negligent treatment of this reaction is a determination left for a jury, the acceptance of the award by the United States Claims Court bars further recovery from Dr. Borah in this instance. By electing to receive the federal award, Appellants acknowledged that Christopher's injuries were vaccine-related. "Congress' overriding purpose was to provide an alternative to traditional tort litigation as a means of compensating persons who were injured by vaccines." *Schumacher v. Secretary of Dept. of Health and Human Services,* 2 F.3d 1128, 1133 (Fed.Cir.1993). Appellants were compensated by the award for Dr. Borah's acts or omissions which under the facts of this case produced vaccine-related injuries. We find that Congress intended this alternative remedy, if accepted by the injured party, to be the sole remedy available against vaccine manufacturers and administrators. *Id.* Permitting Appellants to recover in state court after accepting the United States Claims Court award would constitute a double recovery from the vaccine administrator and defeat the intent of the Vaccine Act. *Id.* "[Appellants] are entitled to one satisfaction for the harm which they have sustained." *Capone v. Donovan,* 332 Pa.Super. 185, 480 A.2d 1249, 1252 (Pa.Super.1984). We caution, however, that if Dr. Borah's acts or omissions were construed as negligent conduct which produced non-vaccine related injuries, the Vaccine Act would not prohibit a subsequent civil action against Dr. Borah. *See e.g., Amendola, supra.* This is not the case here. Accordingly, we affirm the trial court's order granting Dr. Borah's motion for summary judgment.

 We next address Appellants' claim that the trial court committed reversible error when the judge conducted an off the record discussion with one of the defense experts. This discussion was held in the presence of the jury. The trial judge found that his cautionary instruction the following day was sufficient to remedy any appearance of impartiality. Trial Court Opinion, 2/27/98, at 25.

The facts of this case are similar to *Fudala v. Leedom,* 270 Pa.Super. 322, 411 A.2d 548 (Pa.Super.1979). In *Fudala,* the trial court engaged in a private discussion with a medical witness off the record but in the presence of the jury. *Id.* at 549. On appeal, we held that "conversations between the bench and the witness stand should only occur in those rare situations when such intervention is demanded by the interests of justice." *Id.* at 550. Even though the conversation was held out of the hearing of the jury, this Court concluded that the jury may well have misconstrued the court's conversation to the doctor as a judicial "imprimatur" on his credibility. *Id.* Moreover, our Supreme Court has held that a curative instruction is insufficient to rectify the appearance of impartiality in this instance. *McKown v. Demmler Properties,* 419 Pa. 475, 214 A.2d 626 (1965). We are therefore constrained to remand for a new trial as the trial judge's conduct may well have swayed the jury to give more

weight to the defense.[8]

Summary judgment in favor if Dr. Borah affirmed. Judgment in favor of CHOP, Dr. Parks and Dr. Bernbaum vacated. Remanded for further proceedings. Jurisdiction relinquished.

---

8. Because we are remanding for a new trial, we need not address Appellants' remaining claims.

