826 A.2d 863 (2003)
K.H. and D.A.H., Both Individually and as Parents of A.H.,
v.
J.R. and N.R.
Appeal of J.R. (@ No. 107 MAP 2002).
Appeal of N.R. (@ No. 108 MAP 2002).
Nos. 107-108 MAP 2002.
Supreme Court of Pennsylvania.
Argued December 5, 2002.
Decided June 23, 2003.
*865 Jerry A. Snyder, Allentown, for J.R.
Robert Pandaleon, Richard J. Orloski, Allentown, for K.H. and D.A.H.
*866 Kevin Charles Reid, Allentown, for N.R.
Before: CAPPY, CASTILLE, NEWMAN, SAYLOR and EAKIN, JJ.

*864 OPINION

Justice SAYLOR.
In this case, we consider the procedure for perfecting a post-trial appeal of a pre-trial order granting summary judgment to one, but less than all defendants; the scope of the parental duty to supervise a child in the context of a shared custody arrangement; and the adequacy of a jury's award of damages.
Appellant J.R. is the father of N.R. and is divorced from his mother, T.K., who has since remarried. As part of the divorce decree, J.R. and T.K. agreed to share legal custody of N.R., with primary physical custody remaining with T.K. N.R. thus resides with his mother and stepfather during the week, spending weekends with his father. In 1994, J.R. purchased a BB gun for N.R. as a Christmas present. T.K. approved of the gift, provided that the gun was kept at J.R.'s home. N.R. was aware of such condition, was advised by J.R. concerning the safe use of the gun, and had successfully completed a gun safety program in the course of obtaining a hunting license. At some point, J.R. learned that N.R. wanted to take the gun to his mother's home. Although he did not speak with T.K. regarding the removal of the gun, J.R. allowed N.R. to take the gun after being assured by him that his mother approved. Subsequently, T.K. found the BB gun lying on top of her car in the driveway and confronted her son as to why it had been brought home and left in the open. T.K. then asked N.R. to return the gun to J.R.'s residence. Despite the request, however, N.R. never returned the BB gun, and T.K. never ascertained if he had done so.
On September 27, 1995, N.R., who at the time was fourteen years of age, was in possession of the BB gun and was playing after school with a neighbor, Appellee A.H., who was thirteen years old. At the time, N.R.'s mother and stepfather were at work. Although he had not previously misused the BB gun, on this occasion, N.R. pointed it at A.H. and, believing the gun to be unloaded, pulled the trigger, discharging a BB into A.H.'s abdomen. A.H. ultimately underwent exploratory surgery to determine the extent of the injury, with the operation revealing small perforations of the liver and colon, which were repaired by single sutures. In addition, A.H.'s appendix was removed, although it was not injured from the BB. A.H. was hospitalized for ten days, and returned to school three weeks following the procedure. The surgery left A.H. with an eight-and-one-half to nine-centimeter scar on his abdomen.
A.H.'s parents commenced a negligence action against N.R. and J.R.,[1] alleging that N.R. was negligent in firing the weapon and that J.R. was negligent in conveying the BB gun over T.K.'s objection and in failing to: supervise and control his son; keep dangerous firearms out of his son's possession; communicate with N.R.'s mother and stepfather regarding the location of the BB gun; instruct his son respecting the handling of firearms; and enroll his son in a gun safety course.[2] Following discovery, J.R. moved for summary judgment, arguing that the record failed to support the negligence allegations, and that he could not be held liable *867 for negligent supervision because T.K. had primary physical custody of N.R. at the time of the accident. The trial court granted summary judgment, and A.H.'s parents proceeded to trial against N.R., who admitted negligence, thereby limiting the issue to one of damages. In this regard, A.H.'s parents presented, inter alia, expert testimony concerning the nature of the surgery and of a potential cosmetic procedure to lessen the scar. The only medical expense evidence introduced was that associated with the cosmetic surgery, which indicated a cost between $2,300 and $2,700. A.H. testified to experiencing considerable pain from the injury and to embarrassment from the appearance of the scar; however, he was undecided as to whether he would proceed with a cosmetic procedure. After the presentation of evidence, the jury found in favor of A.H.'s parents, awarding damages in the amount of $4,625. A.H.'s parents filed a motion for a new trial, challenging the entry of summary judgment on behalf of J.R., and asserting that the damage award was inadequate.
Explaining the reasons for granting summary judgment, the trial court offered that the record failed to establish negligence on the part of J.R., as he communicated with T.K. concerning the purchase of the BB gun, he instructed N.R. on the handling of firearms, he directed that the gun be kept at his (J.R.'s) home, and N.R. had completed a gun safety course. Furthermore, the court reasoned that no basis existed upon which to find that J.R. was negligent in supervising his son, as T.K. had primary physical custody of N.R. and, correspondingly, had the responsibility to control her son while he was on her property. With respect to the amount of damages, the trial court noted that: A.H. testified that the scar only bothered him when people asked about it; the jury was not shown any recent pictures of the scar; the only evidence concerning the medical expenses was connected with the cosmetic surgery; and A.H. was undecided as to whether he was going to undergo such procedure. The court therefore concluded that the verdict was not so contrary to the evidence as to shock its sense of justice.
A.H.'s parents appealed from the order denying post-trial relief and J.R. and N.R. responded by asserting that the appeal was improper, as it was filed prior to the entry of judgment. See generally Pa. R.A.P. 301(a), (c), (d), note (providing the requisites for an appealable order, including entry of judgment in the docket). To the extent that the appeal sought to challenge the order entering summary judgment, J.R. argued that it was untimely, as A.H.'s parents should have obtained a determination of finality when the order was issued. In the alternative, J.R. maintained that A.H.'s parents should have filed a separate and specific notice of appeal from the summary judgment order following entry of the order denying post-trial motions, as opposed to challenging the order in an appeal generally from the denial of post-trial relief. Reversing in a published decision, the Superior Court concluded that, where, as here, judgment was ultimately entered, a notice of appeal filed prior to the entry of judgment will be treated as timely filed. See K.H. v. J.R., 778 A.2d 695, 697 (Pa.Super.2001) (citing Pa.R.A.P. 905(a)). Next, the court observed that the note following Pennsylvania Rule of Appellate Procedure 341,[3] which concerns final *868 orders, explains that the failure of a party to apply for a determination of finality shall not constitute a waiver, and that the matter may be raised in a subsequent appeal following the entry of a final order disposing of all claims and all parties. See id. at 698. The court did not address the assertion that a separate notice of appeal should have been filed regarding the summary judgment decision.
Proceeding to the substantive claims, the court determined that, pursuant to Section 316 of the Second Restatement of Torts, RESTATEMENT (SECOND) OF TORTS § 316 (1965) (hereinafter "Section 316 of the Restatement"), a parent has a duty to exercise reasonable care to control his or her minor child,[4] and that, since J.R. was aware of the existence of the BB gun, knew that his son had taken it to the home of his mother, and did not speak with his son's mother concerning the return of the gun, he should have reasonably foreseen that his son would misuse the gun. See id. at 700. In reaching this conclusion, the court acknowledged that it had rendered a different holding in a similar case, J.H. ex rel. Hoffman v. Pellak, 764 A.2d 64 (Pa.Super.2000). See id. at 699. The court distinguished Pellak, explaining that the non-custodial parent in that case was unaware of the air pistol used in the incident, whereas in the present case, the father was aware of the existence and possible location of the BB gun. See id. at 700. Under such circumstances, the court concluded that there was sufficient evidence, if believed by the jury, that J.R. knew or should have known of the necessity to exercise control over N.R. See id. The court also held that the verdict of $4,625 was inadequate because: A.H. testified that he felt pain like he never felt before and was fearful of undergoing surgery; exploratory surgery was performed, resulting in a six-inch incision; and A.H. remained in the hospital for ten days, during which he underwent treatment for fear and refusal to eat. See id. at 700-01. In addition, the court noted that A.H. testified that the scar caused him some embarrassment, and that plastic surgery to lessen the scar would cost between $2,300 and $2,700. See id. at 701.
This Court allowed appeal to review whether a single notice of appeal from an order denying post-trial relief is sufficient to permit review of a prior order granting summary judgment, the extent of a parent's duty to supervise his/her child in connection with a shared custody arrangement, *869 and the adequacy of the jury's award of damages.

I.
Concerning the threshold issue involving the propriety of the appeal, J.R. argues that A.H.'s parents waived any challenge to the order granting summary judgment by not separately and specifically appealing such order when it became final following the denial of post-trial motions and the entry of judgment. J.R. emphasizes that the notice of appeal was filed from the order denying post-trial motions; while acknowledging that such motions included a challenge to the order granting him summary judgment, he maintains that a motion for post-trial relief may not be filed to an order granting summary judgment. See Pa.R.C.P. No. 227.1, note. A.H.'s parents counter that the order granting summary judgment was not appealable until the disposition of the claim against N.R., their post-trial motions alleged as an error the grant of summary judgment to J.R., and no provision in the applicable rules, statutes, or case law requires separate notices of appeal from two discrete aspects of a final judgment.
In general, an appeal may be taken as of right only from a final order, which encompasses a judgment, decision, decree, sentence and adjudication, see Pa.R.A.P. 102, and, in relevant part, is defined as one that disposes of all claims and all parties or contains an express determination that an immediate appeal would facilitate a resolution of the entire case. See Pa.R.A.P. 341(a), (b)(1), (3), (c). The note following Rule 341 further provides that the failure of a party to apply to the court for a determination of finality does not result in a waiver, and the matter may be raised in a subsequent appeal following the entry of a final order. See Pa.R.A.P. 341, note. Thus, in an action involving multiple defendants, and in the absence of an express determination by the trial court under Rule 341(c), an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties. See generally Gutteridge v. A.P. Green Servs., Inc., 804 A.2d 643, 650 (Pa.Super.2002) (stating that an order settling a case as to the remaining parties rendered the prior orders granting summary judgment final under Rule 341).
Neither Rule 341 nor the accompanying note, however, indicates whether separate notices of appeal should be filed from the challenged orders.[5] While it has been observed that "a single appeal is incapable of bringing on for review more than one final order, judgment or decree," General Elec. Credit Corp., v. Aetna Cas. & Sur. Co., 437 Pa. 463, 470, 263 A.2d 448, 452 (1970),[6] the *870 scope of this rule has been subject to differing interpretations. For example, in Croft v. Unemployment Comp. Bd. of Review, 662 A.2d 24 (Pa.Cmwlth.1995), the Commonwealth Court, citing General Electric, stated that the practice of filing one appeal from multiple orders is strongly disapproved and, absent compelling circumstances, single appeals from multiple orders would be subject to dismissal. See id. at 28. Croft, however, involved nine claimants who had been discharged by the same employer and who had thereafter separately filed for unemployment compensation benefits. See id. at 26-27. Following a denial of benefits by the local job center and the referee, the claimants appealed to the Unemployment Compensation Board of Review, which issued nine separate opinions and orders affirming the denial of benefits. See id. at 27. The claimants then filed a single petition for review from the nine separate orders. See id. Croft may therefore be distinguished from the present circumstance in which the parties, J.R. and N.R., were defendants in a single negligence suit and A.H.'s parents challenged multiple orders issued during the course of the action. See, e.g., Baker, 725 A.2d at 763 (ruling that a single appeal from various orders dismissing certain defendants based upon preliminary objections and granting summary judgment to others was properly before the court).
In such circumstances, appellate courts have not generally quashed appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired. See General Elec., 437 Pa. at 470-71, 263 A.2d at 453. The existence of a degree of discretion vested in the appellate courts for deciding the viability of a single appeal of multiple orders may be viewed as suggesting that the prohibition reflects a concern with the form of the appeal. See, e.g., Baker, 725 A.2d at 763 (characterizing the defect as procedural).[7] Of additional import, much of the authority in this area pre-dates the 1992 amendments to Appellate Rule 341, which served to eliminate the appealability of orders that contained a final "aspect" as to a particular claim or party.[8]
By comparison, the federal courts employ a definition of finality similar to that set forth in Appellate Rule 341. Cf. FED. R.CIV.P. 54(b) (referring to judgments that adjudicate all claims or the rights of all parties). As here, appellate review is accomplished by filing a notice of appeal; however, a party in the federal system may designate the final judgment, order, or part thereof for review. See FED. R.APP. P. 3(a)(1), (c)(1)(B), app. form 1. Significantly, an appeal taken from the final judgment receives the benefit of a "merger rule," which treats any prior interlocutory orders as merging into the final judgment. See, e.g., In re Westinghouse *871 Sec. Litig., 90 F.3d 696, 706 (3d Cir.1996). See generally 16A CHARLES ALAN WRIGHT & AUTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3949.4 (3d ed.1999) (collecting cases).[9] Where a party specifies a particular part of a judgment or order in their notice of appeal, appellate review may nevertheless be extended to orders not identified in the notice of appeal if the specified and unspecified orders are connected, the intention to appeal the unspecified order is apparent, and the opposing party has not suffered prejudice and has had an opportunity to brief the issues. See Shea v. Smith, 966 F.2d 127, 129 (3d Cir.1992) (collecting cases and relying upon a principle of liberal construction). See generally 20 JAMES WM. MOORE ET AL, MOORE'S FEDERAL PRACTICE § 303.21[3][c][v] (3d ed.1997) (explaining that where an appellant designates only a part of a judgment or identifies a specific order, the appellate court may permit review of related parts provided that the intent to appeal related matters is clear and the opposing party is not prejudiced).
Under our Appellate Rules, an appeal in a civil case in which post-trial motions are filed lies from the entry of judgment. See Pa.R.A.P. 301(a), (c), (d), note; O'Donnell v. Bachelor, 425 Pa. 626, 627, 229 A.2d 755 (1967); Johnston the Florist, Inc. v. TEDCO Constr. Corp., 441 Pa.Super. 281, 286, 657 A.2d 511, 514 (1995) (en banc) (emphasizing that entry of judgment is a prerequisite to appellate jurisdiction). Thus, given the definition of finality in Rule 341, and the procedure reflected in rules governing the manner in which to appeal, see Pa.R.A.P. 902, 904, in the context of a single action, a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment. Accord Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1253 (3d Cir.1977). Similarly, in the circumstance where each of the defendants in a single action is dismissed prior to trial, an appeal from the order dismissing the remaining claim or party is sufficient to bring for review the earlier issued orders. See generally Philadelphia Contributionship Ins. Co., v. Shapiro, 798 A.2d 781, 782 n. 1 (Pa.Super.2002) (allowing the appellants to raise all issues regarding prior orders from an appeal of the last issued order). Any concern as to the intended scope of the appeal may be addressed through the filing of a statement of matters complained of on appeal pursuant to Appellate Procedural Rule 1925(b).[10]
A.H.'s parents, however, did not appeal from the entry of judgment, but rather, indicated in their notice of appeal that they were appealing from the denial of post-trial motions.[11] Although an appeal *872 from an order denying post-trial motions is interlocutory, see Pa.R.A.P. 301(a), (c), (d), note; Johnston the Florist, 441 Pa.Super. at 287, 657 A.2d at 514, where, as here, judgment is subsequently entered, the appeal is "treated as filed after such entry and on the date thereof." Pa.R.A.P. 905(a). While such rule resolves the jurisdictional concern, the scope of the appeal remains at issue. In light of the liberal construction of our appellate rules, see Pa. R.A.P. 105(a), we view the appropriate inquiry in such circumstance as similar to that employed by the federal courts, focusing upon whether the orders are related or connected; whether the intention to appeal the unspecified order is apparent; and the existence of prejudice to the opposing party.
Here, the order granting J.R. summary judgment is arguably unconnected with that involving N.R.; however, the propriety of the prior order was raised in the post-trial motions filed by A.H. parents,[12] J.R. was served with a copy of the motions, filed a brief in response, and there is no indication that he suffered prejudice. Furthermore, although a Rule 1925(b) statement was not filed, the Superior Court docketing statement completed by A.H.'s parents identified the order granting summary judgment as an issue to be raised on appeal. See generally Pa.R.A.P. 3517 (requiring the completion of a docketing statement following the filing of a notice of appeal). Consequently, the appeal from the order denying post-trial motions was sufficient to encompass the prior order entering summary judgment in favor of J.R.

II.
Turning to the merits, J.R. maintains that, as the duty of supervision and control of a child is vested in the parent with physical custody, a duty may not be imposed in the absence of such custody. J.R. asserts that this limitation is consistent with both the authority from other jurisdictions that have addressed the liability of non-custodial parents for the tortious conduct of their children, see, e.g., Pfaff ex rel. Stalcup v. Ilstrup, 155 Ariz. 373, 746 P.2d 1303 (Ct.App.1987), and with the Superior Court's decision in Pellak. A.H.'s parents counter that J.R.'s legal and shared physical custody of N.R. renders him a custodial parent and support the application of Section 316 of the Restatement to determine his duty. In this regard, A.H.'s parents argue that J.R. knew that he had the ability to supervise and control N.R., as he had previously instructed N.R. respecting the proper handling of the BB gun and had restricted the use of the gun. A.H.'s parents also emphasize that J.R. was aware of the necessity for exercising control over his son, as he acknowledged *873 during his deposition that young men sometimes "get carried away" with BB guns.[13]
Although a parent/child relationship by itself is insufficient to render the parents liable for the tortious acts of their children, liability may attach where the negligence of the parents makes the injury possible. See Condel v. Savo, 350 Pa. 350, 352, 39 A.2d 51, 52 (1944). Section 316 of the Restatement reflects this principle by limiting the duty of a parent to control the conduct of a child to those instances in which a parent has the ability to control the child, knows of its necessity, and has the opportunity to do so.[14] While the extension of liability is further conditioned upon a finding that the failure to control created an unreasonable risk of harm, resolution of the present issue involves consideration of the ability and opportunity requisites. In this regard, the terms are further defined in the commentary following Section 316, which indicates that:
The duty of a parent is only to exercise such ability to control his child as he in fact has at the time when he has the opportunity to exercise it and knows the necessity of so doing.
* * *
Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it.
RESTATEMENT (SECOND) OF TORTS § 316 cmts. b, c. Notably, the commentary appears to treat the terms as interrelated.[15]
A.H.'s parents maintain that ability and opportunity under Section 316 of the Restatement are satisfied through J.R.'s rights and obligations as a legal custodian with shared custody. The effect of a shared custody arrangement upon a parent's liability for a failure to control a child is an issue of first impression before this Court; however, as noted, the Superior Court addressed this circumstance in J.H. v. Pellak, 764 A.2d at 68-69. In Pellak, the parents of the minor defendant had a shared custody arrangement, during the course of which the father had purchased an air pistol and an air rifle for his son that were stored, used and maintained solely at the father's home. See id. at 65, 68. Although the mother was aware of the air rifle, she did not know of the existence of the air pistol. See id. at 68 & n. 1. While in the physical custody of the father, the minor, who was twelve years of age, used the air pistol to shoot a friend. See id. at 65, 68. The parents of the victim initiated an action for negligent supervision *874 against, inter alia, the minor defendant's mother. See id. at 65. In affirming the entry of summary judgment in favor of the mother, the Superior Court concluded that, as the mother did not know of the existence of the air pistol, she was unaware of the need to supervise, and, as she did not have physical custody at the time of the incident, she was not in a position to exercise control. See id. at 65, 68. Concerning the effect of the shared custody arrangement, the court in Pellak reasoned that:
In conclusion, we make clear that the duty to exercise reasonable care to control a child must be limited. It arises when a parent at the relevant time knows or should know of the need to exercise parental control and has the ability and opportunity to do so. Neither shared physical custody nor shared legal custody for a child changes that standard.
* * *
Legal custody is defined by statute as the legal right to make major decisions affecting the best interest of a minor child, including, but not limited to, medical, religious and educational decisions. Shared legal custody is specifically designed to invite input from both parents on such major decisions. Shared legal custody was never intended to govern the myriad of daily domestic decisions that a parent with physical custody makes. Nor was it intended to be the basis for imputing negligence to a parent who did not know of the need to exercise control and did not have the ability or opportunity to do so.
Id. at 68-69 (emphasis in original) (citations omitted).
Courts in other jurisdictions have similarly considered the ability and opportunity requirements under Section 316 of the Restatement in declining to subject parents to liability absent such proof of presence and proximity. See, e.g., Pfaff, 746 P.2d at 1303 (upholding a grant of summary judgment to parent who did not have physical or legal custody, stating that "[c]ontrol requires present ability to affect the conduct of another[;] [p]otential ability is insufficient"); Robertson v. Wentz, 187 Cal.App.3d 1281, 232 Cal.Rptr. 634, 639 (1986) (concluding that, absent physical custody, mere legal custody is insufficient as a basis to premise liability for negligent supervision); Canida v. Canida, 751 So.2d 647, 649 (Fla.Dist.Ct.App.1999) (construing a statute imposing liability on parents for the destruction of school property consistent with the common law in concluding that only the parent with primary physical custody may be liable as she has the opportunity to exert parental control);[16]Barth v. Massa, 201 Ill.App.3d 19, 146 Ill.Dec. 565, 558 N.E.2d 528, 534 (1990) (finding that parents were not subject to liability for negligent supervision where they were not present or in close proximity at the time of their child's injurious conduct); Moore v. Crumpton, 306 N.C. 618, 295 S.E.2d 436, 441-42 (1982). Although defining ability and opportunity as physical presence at the exact instant of the tort would be unduly restrictive and would undermine the duty to supervise recognized in Section 316 of the Restatement, supervision and control assume a measure of present ability to discipline. See generally Dinsmore-Poff v. Alvord, 972 P.2d 978, 984-85 (Alaska 1999) (discussing the definition of ability and opportunity).
*875 We therefore agree with the reasoning of the Superior Court in Pellak that one's status as a legal custodian is not, in and of itself, dispositive in establishing the ability and the opportunity to control. In this case, the fact that J.R. was aware of the BB gun and agreed to allow N.R. to take it to his mother's home does not alter the absence of evidence demonstrating ability and opportunity to control or provide a meaningful basis for distinguishing Pellak. Moreover, considering the difficulty and emotion that often attend custody arrangements, imposing a duty to supervise upon a non-custodial parent would unnecessarily interject additional tension into the domestic relations arena. Thus, we conclude that the trial court properly awarded summary judgment to J.R., and that the Superior Court erred in reversing the order.

III.
Finally, N.R. argues that the Superior Court overstepped its authority in awarding a new trial based upon the inadequacy of the verdict, particularly since the jury awarded damages for pain and suffering. A.H.'s parents counter that, in light of the substantial nature of the injuries suffered, the amount of the verdict was inadequate as a matter of law. The responsibility for controlling the amount of a verdict is vested with the trial court, which is in a better position than an appellate court to assess the facts in the context of the atmosphere surrounding the case and thereby to ensure justice. See Davis v. Mullen, 565 Pa. 386, 391, 773 A.2d 764, 766 (2001). A verdict may not be disturbed because the evidence is conflicting or because the court would have reached a different conclusion, see id. at 390, 773 A.2d at 766; rather, the award of a new trial based upon inadequacy of a verdict is proper only where the jury's finding appears to have resulted from "passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." Kiser v. Schulte, 538 Pa. 219, 225, 648 A.2d 1, 4 (1994).
The damages at issue in this case were for pain and suffering and future medical expenses. As to the former, however, no precise measure existsthe guiding standard entails a determination of fairness and reasonableness. See Schenkel v. Pittsburgh & B. Traction Co., 194 Pa. 182, 185-86, 44 A. 1072, 1073 (1899); Pape v. Short, 199 Pa.Super. 617, 618, 186 A.2d 431, 432 (1962). Indeed, it is for this reason that such awards are peculiarly within the discretion of the jury. See James v. Ferguson, 401 Pa. 92, 99, 162 A.2d 690, 694 (1960); Pape, 199 Pa.Super. at 618, 186 A.2d at 432. See generally 2 JACOB A. STEIN, STEIN ON PERSONAL INJURY DAMAGES § 8:8 (3d ed.1997) (noting that because damages for pain and suffering have no market value and no means of measurement, the amount of any such award is reserved for the judgment of the jury). Here, as emphasized by the Superior Court and A.H.'s parents, A.H. testified that he experienced considerable pain; he underwent exploratory surgery, which revealed small perforations of his liver and colon; he remained in the hospital for ten days and received counseling; the scar from the surgery causes him embarrassment; and a surgeon opined that the scar would become larger absent cosmetic surgery, a procedure that would cost between $2,300 and $2,700.
While such evidence indicates that the verdict may be inadequate, at the same time, as the trial court explained in reviewing the award, there was also evidence that A.H. was able to return to school within three weeks of the operation and was able to resume his normal activities, including football and wrestling, three *876 months following surgery. In addition, the trial court stressed that A.H. stated that the scar only bothered him when he was asked about it; the jury was not shown any recent photographs of or provided with a view of the scar; and A.H. was undecided as to whether he was going to proceed with any cosmetic surgery. The trial court also underscored that the only evidence introduced concerning medical expenses was that associated with the possibility of cosmetic surgery. In light of the competing evidence of the circumstances surrounding the injury, we cannot conclude that the trial court abused its discretion in declining to find that the jury's verdict was so contrary to the evidence as to shock the court's sense of justice. See Davis, 565 Pa. at 390-91, 773 A.2d at 766.
In summary, the appeal by A.H.'s parents from the denial of post-trial motions properly included the prior summary judgment order. In addition, the entry of summary judgment on behalf of J.R. was proper, and the trial court did not abuse its discretion in failing to award a new trial on the issue of damages.
The order of the Superior Court is reversed.
Former Chief Justice ZAPPALA and Justice NIGRO did not participate in the consideration or decision of this case.
Justice NEWMAN files a concurring opinion.
JUSTICE NEWMAN CONCURRING.
I join in the majority opinion but I write separately to articulate my position that this case should not be understood to insulate parents from liability for the tortious acts of their children. Restatement (Second) of Torts § 316, which the majority cites, provides in relevant part as follows:
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control.
As noted by the majority, this principle is consistent with our case law. Condel v. Savo, 350 Pa. 350, 39 A.2d 51 (1944). See also Brisbine v. Outside In School of Experiential Education, Inc., 799 A.2d 89 (Pa.Super.2002), petition for allowance of appeal denied, 816 A.2d 1101 (Pa.2003). "If an injury inflicted by a child is the natural and probable result of the parents' negligence, the parents have breached a duty owed to the injured child and his parents. Furthermore, if the injury [should] have been foreseen by the parents, their negligence is the proximate cause of the injury." Frey By and Through Frey v. Smith By and Through Smith, 454 Pa.Super. 242, 685 A.2d 169, 174 (1996), petition for allowance of appeal denied, 549 Pa. 701, 700 A.2d 441 (1997) (internal quotation and citation omitted). While the majority appears reluctant to adopt Restatement (Second) of Torts § 316, I have no such reservation.
Comment a to Restatement § 316 explains that "[w]hile the father as head of the family group is no longer responsible for the actions of all the members of his household ... he is responsible for their conduct in so far as he has the ability to control it. This duty is not peculiar to a father. It extends to the mother also in so far as her position as mother gives her an ability to control her child." Thus, to ascertain whether an individual parent is negligent and liable for the tortious conduct of a child, the ultimate question focuses on the ability and opportunity of that *877 parent to control the child. In the case sub judice, J.R. (Father) did not have physical custody of N.R. (Son) during the week. Son brought the BB gun to the home of T.K. (Mother) and kept it there, despite Mother's request that he take the gun back to the residence of Father.
When Son removed the BB gun from the home of Father and brought it with him to the residence of Mother, Father no longer had the ability or opportunity to control the conduct of Son with relation to the gun and, therefore, cannot be negligent in failing to supervise Son's use of it. However, we cannot evaluate the conduct of Mother, and her potential liability, in this forum because Mother was not a party to the present action.[1] Whatever the culpability of Mother, if any, this case should not be viewed as a shield to protect parents from liability for their negligence in failing to properly control their children, where such control is possible and necessary to protect others.
NOTES
[1] A separate action was filed against T.K. and N.R.'s stepfather, the disposition of which is unclear from the record.
[2] The claims were presented in a single complaint naming N.R. and J.R. as defendants.
[3] In relevant part, Rule 341 states:

(c) Determination of Finality. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.
Pa.R.A.P. 341(c). The accompanying note adds that:
The failure of a party to apply to the administrative agency or lower court for a determination of finality pursuant to subdivision (c), shall not constitute a waiver and the matter may be raised in a subsequent appeal following the entry of a final order disposing of all claims and all parties.
Pa.R.A.P. 341 note.
[4] In this regard, Section 316 provides:

Duty Of Parent To Control Conduct Of Child
A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
(a) knows or has reason to know that he has the ability to control his child, and
(b) knows or should know of the necessity and opportunity for exercising such control.
RESTATEMENT (SECOND) OF TORTS § 316 (1965).
[5] While the Rules of Appellate Procedure do not specifically address the circumstance at issue here, provision is made for joint appeals as follows:

Parties interested jointly, severally or otherwise in any order in the same matter or in joint matters or in matters consolidated for the purposes of trial or argument, may join as appellants or be joined as appellees in a single appeal where the grounds for appeal are similar, or any one or more of them may appeal separately or any two or more may join in an appeal.
Pa.R.A.P. 512. There is no indication that A.H.'s parents sought to invoke Rule 512 in filing their notice of appeal; indeed, they do not cite to it in their brief. Parenthetically, Rule 512 has been interpreted as addressing the consolidation of multiple cases on appeal, with the accompanying note cautioning against the filing of a single appeal from several judgments. See generally Baker v. Cambridge Chase, Inc., 725 A.2d 757, 763 (Pa.Super.1999) (discussing the application of Rule 512).
[6] Accord Frailey Township Sch. Dist. v. Schuylkill Mining Co., 361 Pa. 557, 560, 64 A.2d 788, 790 (1949). Notably, the rule derives from the common law writ of error practice. See generally Cauley v. Pittsburgh, Cincinnati and St. Louis Ry. Co., 95 Pa. 398, 403 (1880) (requiring a separate writ of error in each case as a prerequisite to appellate review); People v. Mahan, 329 Ill. 217, 160 N.E. 134, 135 (1928) (discussing common law writ of error review in the context of multiple defendants).
[7] Collection of fees associated with the appeals also appears to have been a consideration. See, e.g., Cauley, 95 Pa. at 403 (noting the loss of tax where only a single writ of error is filed).
[8] Prior to the 1992 amendments, jurisdictional considerations were implicated, as a summary judgment order such as that at issue here would have been immediately appealable, and the failure to lodge an appeal within thirty days, see Pa.R.A.P. 903(a), resulted in a waiver. See Sweener v. First Baptist Church of Emporium, Pa., 516 Pa. 534, 538-39, 533 A.2d 998, 999-1000 (1987).
[9] Other jurisdictions apply a similar rule of review. See, e.g., U.S. Builders, Inc. v. Atlantic Louetta, L.P., 95 S.W.3d 585, 588-89 (Tex. App.2002); Riffe v. Armstrong, 197 W.Va. 626, 477 S.E.2d 535, 547 (1996) (stating that an appeal from a final order brings along with it for review earlier issued non-final orders).
[10] Alternatively, a reference in the notice of appeal to any prior orders that have become appealable by virtue of the disposition of the remaining claims and parties may also serve to eliminate any confusion surrounding the object of an appeal. See generally 1 G. RONALD DARLINGTON ET AL., PENNSYLVANIA APPELLATE PRACTICE § 341:3.1.01 (2d ed.1994) (discussing appeals involving multiple orders and providing an example of a notice of appeal for such a circumstance).
[11] Practitioners have been repeatedly cautioned against this practice, see, e.g., O'Donnell, 425 Pa. at 626, 229 A.2d at 755; Mackall v. Fleegle, 801 A.2d 577, 580-81 (Pa.Super.2002); Alfred M. Lutheran Distribs., Inc. v. A.P. Weilersbacher, Inc., 437 Pa.Super. 391, 393 n. 1, 650 A.2d 83, 84 n. 1 (1994); nevertheless, its frequency may reflect the absence of a specific indication in the Appellate Rules, as opposed to the accompanying notes, to the requirement of entering judgment following an order denying post-trial motions, as well as the reference in the form notice of appeal in Rule 904(a) to the term "order" (although, as noted, this is defined as including judgment, see Pa.R.A.P. 102).
[12] As noted by J.R., the Rules of Civil Procedure do not contemplate the filing of post-trial motions to orders, or to proceedings that do not constitute a trial. See Pa.R.C.P. No. 227.1, note (explaining post-trial motions may not be filed to, inter alia, an order disposing of a motion for summary judgment). This prohibition does not address the circumstance where one party is dismissed and the case proceeds to trial as to the remaining parties. In any event, while it is unnecessary to include a prior order granting summary judgment in post-trial motions for purposes of issue preservation, the fact that A.H.'s parents, in an abundance of caution, included such order in an attempt to seek reconsideration of it does not preclude review on appeal. See Harman ex rel. Harman v. Borah, 720 A.2d 1058, 1061 n. 6 (Pa.Super.1998), rev'd on other grounds, 562 Pa. 455, 756 A.2d 1116 (2000).
[13] In addition, A.H.'s parents claim that J.R. should be held liable for entrusting a "dangerous instrumentality" to N.R. This argument implicates a different theory of liability, namely, negligent entrustment. See generally RESTATEMENT (SECOND) OF TORTS §§ 308, 390 (1965) (addressing negligence associated with permitting unqualified or incompetent persons to use things). Apart from employing the phrase in connection with their negligent supervision argument, however, A.H.'s parents do not develop such theory, and it is beyond the scope of the issues identified in our limited grant of review in this case.
[14] This Court has not previously adopted Section 316; nevertheless, its requirements are consistent with those expressed in the Court's jurisprudence. See Condel, 350 Pa. at 354, 39 A.2d at 53 (limiting parental liability to a failure to exercise control that they have over the child and in circumstances where the parents "know, or in the exercise of due care should know, that injury to another is a natural and probable consequence....").
[15] See generally Note, The Development and Current Status of Parental Liability for the Torts of Minors, 76 N.D. L.REV. 89, 94-95 (2000) (acknowledging the difficulty in determining the difference between ability and opportunity to control and comparing cases in which the terms were used interchangeably).
[16] Pennsylvania has also enacted a parental liability statute, which, inter alia, imposes a form of strict liability upon parents for the willful tortious acts of their children, limits the amount of recovery, and excepts non-custodial parents from liability. See 23 Pa.C.S. §§ 5502, 5505, 5508. This statute, however, does not affect the common-law liability of parents. See 23 Pa.C.S. § 5509.
[1] The majority opinion notes that the parents of A.H. filed a separate action against Mother and her new husband, though the record does not indicate the outcome of that proceeding.