446

78 A.3d 1070

COMMONWEALTH of Pennsylvania, Appellant

v.

William L. WRIGHT III, Appellee.

Supreme Court of Pennsylvania.

Submitted April 3, 2013.

Decided Oct. 30, 2013.

448

Billy Horatio Nolas, Esq., Federal Community Defender Office, Eastern District of PA, for Thomas M. Glenn, Jennifer K. Glenn–Elliott and William H. Wright, Next of Friends, Amicus Curiae.

Richard A. Consiglio, Esq., Derek J. Elensky, Esq., Blair County District Attorney's Office, for Commonwealth of Pennsylvania.

Anna Margaret Ahronheim, Esq., for William L. Wright, III.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice SAYLOR.

In this capital case, the Commonwealth appeals an order finding Appellee incompetent to waive his state post-conviction rights, including his right to counsel.

### I. Background

Appellee was sentenced to death for the 1998 murder of James Mowery. While his direct appeal was pending, Appel-

lee filed a pro se habeas corpus petition in federal court, *see* 42 U.S.C. § 2254, asking that court to direct this Court to either issue a decision within 60 days or release him from custody. The district court appointed the Federal Public Defender for the Western District of Pennsylvania to represent Appellee.[1] The habeas matter was stayed pending exhaustion of state remedies.

Although represented, Appellee filed a second pro se document in the federal court, demanding that his direct appeal be discontinued and that he be allowed to proceed immediately to execution. Appellee also filed papers reflecting that he wished to discharge counsel due to irreconcilable differences, and that counsel was forbidden to communicate with Appellee. Shortly thereafter, in December 2008, this Court affirmed Appellee's judgment of sentence. *See Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119 (2008). Appellee then asked the federal district court to supply him with a replacement attorney to assist him in pursuing guilt-phase claims in that forum. The court denied the request, stating that Appellee had not established the existence of an irreconcilable conflict with counsel. Separately, Appellee petitioned the Third Circuit Court of Appeals (again, *pro se* ) for mandamus relief in the form of an order directing the district court to rule on his *pro se* filings. In August 2010, the Third Circuit denied the petition without prejudice, retaining jurisdiction and instructing the district court to determine whether Appellee was competent to waive counsel.

Meanwhile, on or about the last day of the one-year period for filing a petition under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546, counsel filed in the county court a petition on Appellee's behalf, albeit without a verification as required. *See* Pa.R.Crim.P. 902(A)(14).[2] The

1. The federal defender (hereinafter, "counsel") is acting as Appellee's attorney for purposes of the present, post-conviction proceedings. *See infra* note 2.

2. According to counsel, after Appellee's direct-appeal attorney withdrew in June 2009, the common pleas court did not appoint new counsel for state post-conviction purposes because the triggering event for such appointment—the remand of the record from this Court, *see*

Commonwealth moved to strike the petition for lack of a verification, and the court issued a rule to show cause why the motion should not be granted. Counsel responded that Appellee had refused all consultations and may be incompetent to waive his post-conviction rights, including his right to counsel. Thus, counsel sought permission to pursue the litigation through relatives of Appellee as next friends.[3]

A hearing on the motion was held in October 2010. Appellee participated by videoconference and confirmed that he had declined all visits and phone calls with counsel, and had returned all mail from their office unopened. In this regard, Appellee asserted that: he wished to represent himself; the PCRA petition had been filed against his will and should not have been filed; he had discharged counsel two years earlier during the proceedings in federal court; he did not wish to "have anything to do with" counsel; and counsel were using the competency issue solely to avoid being discharged. *See* N.T., Oct. 15, 2010, at 8–14, 21, 27. The Commonwealth concurred with Appellee that the PCRA petition should not have been filed, but it agreed that the petition should not be stricken until Appellee's competence could be judicially established. *See id.* at 20. For their part, counsel asked the court to deny the motion to strike on procedural grounds, since they should be given an opportunity to cure any defect through amendment. *See id.* at 29.

At the conclusion of the hearing, the PCRA court entered an order continuing the matter on its own motion until it could confer with the federal district court concerning the appropri-

Pa.R.Crim.P. 904(H)—did not occur, since the record had been sent to the federal court. Against this backdrop, the federal court granted the lawyers' request to expand their appointment to subsume litigation of a PCRA petition in state court, and to send the record to the Blair County Court of Common Pleas. Counsel presently claims to have filed the PCRA petition without Appellee's consent because the one-year deadline was approaching and, if allowed to expire, Appellee could have lost the opportunity to raise certain potentially-meritorious constitutional claims. *See* Brief for Appellee at 8–9 & n.3.

3. Billy H. Nolas, Esq., of the Federal Community Defender Office for the Eastern District of Pennsylvania (the "FCDO"), entered an appearance as counsel for the putative next friends. The FCDO's participation in this case is discussed in Section IV, below.

ate path forward. With the competency issue now pending in both state and federal courts, the Third Circuit directed the federal district court to stay all proceedings to allow the state court to rule on Appellee's competence.

The PCRA court (per the same judge as presided at trial) appointed psychiatrist Dr. Hansa Shah and psychologist Dr. Gail Vant Zelfde, both of Norristown State Hospital, to perform an evaluation to determine Appellee's competence. In April 2011, these experts conducted a 2.5–hour clinical examination of Appellee and issued a report based solely on that examination,[4] opining that Appellee understood the reasons for his death sentence and its implications, and that he was competent to discharge counsel and waive his post-conviction rights. At a June 2011 evidentiary hearing, Attorney Nolas cross-examined the experts and called his own expert witness, who suggested that the court's experts lacked an adequate foundation for their opinions because they had not reviewed Appellee's extensive medical and court records.[5] The Commonwealth also cross-examined the experts, as did Appellee, acting *pro se*.[6]

Thereafter, at the court's direction, Drs. Shah and Vant Zelfde conducted a thorough records review of Appellee's

4. According to the PCRA court, no other information was available to the mental-health experts at the time of their initial report. *See Commonwealth v. Wright*, No. 98–CR–1980, *slip op.* at 4 (C.P. Blair, May 29, 2012). Additionally, the experts interpreted the court's directive, which emphasized that sentencing and mitigation were not at issue, as seeking an assessment of Appellee's current thought processes without reference to his mental-health history or the opinions of other mental-health professionals.

5. The Commonwealth objected throughout the proceedings to the participation of the attorney for the putative next friends, arguing that next friend standing had not yet been established. *See Commonwealth v. Haag*, 570 Pa. 289, 303, 809 A.2d 271, 280 (2002) (concluding that, to have standing to seek post-conviction relief on behalf of a prisoner, a putative next friend must demonstrate, *inter alia*, that the prisoner is incompetent). The Commonwealth has not renewed that objection on appeal.

6. In this instance, *"pro se "* simply means that Appellee cross-examined the experts himself, and not that he lacked an attorney of record. The court permitted this to occur because Appellee and his counsel were at cross-purposes throughout the proceeding. *See infra* note 9.

mental-health history (6,000 pages in all), and sought to re-interview him. Appellee refused to be interviewed a second time, however, alleging in a letter to the PCRA court that the experts had become "contaminated" by the federal defenders and their experts, and that any further interview would be used against him. In October 2011, Drs. Shah and Vant Zelfde issued an addendum to their original report, stating that, upon review of Appellee's records, they were no longer confident in their initial opinion concerning Appellee's competence.

Three months later, in January 2012, the court resumed its evidentiary hearing in a two-day proceeding at which Drs. Shah and Vant Zelfde were the only witnesses. Having undertaken the records review, Dr. Vant Zelfde testified that Appellee displayed cognitive rigidity, paranoid ideations, and personality disorders. She stated that some of these traits were evident from Appellee's voluminous and highly detailed writings such as those reflected in his numerous prison grievances, as well as his history of dismissing professionals who could be of assistance to him. Overall, she indicated that, in light of Appellee's documented history, her observations of Appellee during the June 2011 proceeding, and Appellee's refusal to be re-interviewed on the grounds of an imagined conspiracy, Appellee was severely impaired in his decision-making and, within a reasonable degree of psychological certainty, he was incompetent to make a knowing, intelligent, and voluntary decision to waive counsel. Dr. Vant Zelfde clarified, however, that she was not speaking of incompetence in a legal sense, but only in a psychological sense. *See* N.T., Jan. 17, 2012 (day session), at 41, 111, 159; N.T., Jan. 17, 2012 (evening session), at 20. *See generally Holmes v. Buss,* 506 F.3d 576, 581 (7th Cir.2007) (delineating the difference between psychological and legal competence). As to legal competence, Dr. Vant Zelfde indicated only that she would continue to endorse the language contained in the October 2011 addendum reflecting that she and Dr. Shah could no longer be confident in their initial assessment that Appellee was competent. *See* N.T., Jan. 17, 2012 (day session), at 119.

Dr. Shah testified similarly, stating that, based on all of the same factors cited by Dr. Vant Zelfde, she considered Appellee incompetent, within a reasonable degree of psychiatric certainty, to waive counsel knowingly, intelligently, and voluntarily. *See* N.T., Jan. 18, 2012, at 10.[7] Dr. Shah added that she viewed the April 2011 initial report as a "mistake," because she and Dr. Vant Zelfde had not conducted a sufficiently thorough background investigation due to their interpretation of the PCRA court's directive with regard to the scope of the requested evaluation. *See* N.T., Jan. 18, 2012, at 34. Still, both experts stated that, in spite of Appellee's mental difficulties, he *is* aware that: he was tried and convicted of first-degree murder; he was sentenced to death as a result of that conviction; a withdrawal of the PCRA petition could lead to his execution; and death is final. *See id.* at 28 (Dr. Shah); N.T., Jan. 17, 2012 (evening session), at 36–37 (Dr. Vant Zelfde).

At the January 2012 hearing, the Commonwealth also sought to call as fact witnesses several of Appellee's prior attorneys, proffering that these individuals would confirm that Appellee had cooperated with them during legal proceedings that had occurred many years earlier. The Commonwealth explained that such testimony was necessary to rebut a suggestion made by Attorney Nolas at the June 2011 hearing that Appellee should be found incompetent to make decisions, in part, because he displays a pattern of refusing to cooperate with professionals who are in a position to assist him. The Commonwealth stressed, in this regard, that the court's mental-health experts had recited this alleged aspect of Appellee's mental-health history in their October 2011 addendum, thus reflecting that their assessment may have been based on a false premise. Separately, the Commonwealth suggested that, although Appellee was already represented by counsel, he

7. Dr. Shah was not as explicit as Dr. Vant Zelfde in specifying that her opinion subsumed only a psychiatric/psychological analysis, as opposed to a legal assessment. The differentiation is implicit because the question, to which Dr. Shah simply answered, "Yes," was framed in terms of whether she agreed with Dr. Vant Zelfde's conclusion regarding Appellee's competence. *See id.*

should have his own standby lawyer since he viewed himself as having discharged counsel, whose interests were opposed to his own relative to the competency determination. *See supra* note 6. For his part, Appellee (joined by the Commonwealth) requested that he be given a colloquy such as the one approved in *Commonwealth v. Bronshtein*, 556 Pa. 545, 729 A.2d 1102 (1999),[8] conducted by the court or standby counsel (if the court agreed to appoint such counsel), and that the court make its decision based on the colloquy. The court, however, deferred ruling on all of these requests, and ultimately announced its adjudication, as described below, effectively denying them.

On May 29, 2012, the PCRA court issued an opinion and order, concluding that Appellee was incompetent to waive his rights, including his right to counsel. The court expressed that Appellee had demonstrated a pattern of thwarting the attempts of individuals who could aid him, and of viewing opportunities for him to advance his case as conspiracies against him that would be furthered by his cooperation. The court reasoned, in this regard, that Appellee's refusal to be reinterviewed by the experts was consistent with the "diagnosed difficulties" they delineated in their October 2011 addendum. *Commonwealth v. Wright*, No. 98–CR–1980, slip op. at 7 (C.P.Blair, May 29, 2012) (*"Wright I"*). The court explained, moreover, that the experts' conclusions were based on: their exposure, during Appellee's pro se cross-examination of them, to his preoccupation with minute detail while losing sight of the larger picture; Appellee's pattern of dismissing professional resources available to him; his impulsive reactivity and "irritable and pressured" speech; his "rigid approach, theatrical behavior, and black and white thinking;" and his "underly-

---

**8.** The *Bronshtein* colloquy, as summarized by this Court, involved questions designed to assure that: it was Bronshtein's decision alone to waive counsel; there were no external influences driving the decision; Bronshtein had not wavered in his intention for a substantial period; he understood that he could be put to death as a result of his decision and that death is final; and he knew that he could change his mind at any point during the colloquy in spite of his steadfast insistence during the previous year or two that he wished to waive counsel and proceed directly to execution. *See id.* at 551–53, 729 A.2d at 1105–06.

ing paranoid frame of reference." *Id.* at 7–9. As for the requested *Bronshtein* colloquy, the court developed that the procedure was unnecessary because Appellee's answers during such questioning could not override the expert evidence of incompetence on which the court grounded its determination. *See id.* at 16.

The Commonwealth requested reconsideration, arguing primarily that the court should not have found Appellee incompetent absent a *Bronshtein* colloquy. By order and opinion dated June 19, 2012, the court denied reconsideration and elaborated on its reasons for declining to hold a colloquy. The court observed that, in *Bronshtein,* the county court was unable to obtain a definitive expert opinion as to the prisoner's competence, and hence, it had to fashion an appropriate colloquy and rely solely on the inmate's responses and the court's own observations as the colloquy ensued. Here, by contrast, the court had the benefit of two expert opinions based on extensive court and medical records, combined with the court's and the experts' first-hand observations of Appellee during his pro se cross-examination of the experts. *See Commonwealth v. Wright,* No. 98–CR–1980, slip op. at 7 (C.P. Blair, June 19, 2012) (*"Wright II "*).

After the Commonwealth filed a notice of appeal, counsel moved to strike the notice as a "legal nullity" and continue with PCRA proceedings.[9] In its motion, counsel argued that the PCRA court's competency determination was an interim ruling that did not qualify as either an appealable collateral order or an interlocutory order appealable as of right or by permission. The PCRA court denied the motion, reasoning that any question regarding the propriety of the appeal should be resolved by this Court. The Commonwealth then filed a motion to stay further proceedings in the PCRA court, asserting that that court's adjudication of Appellee as incompetent

9. We refer here to counsel rather than Appellee because Appellee's stated interests are at odds with counsel's. *See Commonwealth v. Sam,* 597 Pa. 523, 541 n. 15, 952 A.2d 565, 576 n. 15 (2008) (declining to follow the custom of attributing arguments to the party where counsel's position was contrary to that expressed by his client); *Commonwealth v. Watson,* 597 Pa. 483, 500 n. 8, 952 A.2d 541, 551 n. 8 (2008) (same).

to waive counsel constitutes an appealable collateral order. As an alternative, the Commonwealth requested that the court certify its ruling for interlocutory appeal under Section 702(b) of the Judicial Code. *See* 42 Pa.C.S. § 702(b); *see also* Pa. R.A.P. 312, 1311 (relating to interlocutory appeals by permission).

By order dated August 30, 2012, the PCRA court denied the certification request as untimely, but granted the stay. As to the stay, the court reasoned that, until the competency issue is resolved, proceeding on the putative next friends' petition would be impractical since the determination of competence is a threshold requirement to decide that petition.

## II. Appellate Jurisdiction

A threshold question is whether this Court has jurisdiction to decide the appeal. Appeals are ordinarily taken from final orders.[10] Under the collateral order doctrine, an appeal as of right also lies from a non-final order meeting the criteria reflected in appellate rule 313(b). *See* Pa.R.A.P. 313(b) (defining a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost"). Thus, a non-final ruling is appealable where three conditions are satisfied: (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) if review is postponed, the claim will be irreparably lost. *See Rae v. Pa. Funeral Dirs. Ass'n,* 602 Pa. 65, 69, 977 A.2d 1121, 1124 (2009).

The first prerequisite, separability, is met where review of the order in question does not implicate the merits of the underlying dispute. *See Commonwealth v. Dennis,* 580 Pa. 95, 107, 859 A.2d 1270, 1277 (2004); *Melvin v. Doe,* 575 Pa.

---

10. A final order is an order expressly defined as final by statute, *see* Pa.R.A.P. 341(b)(2), or an order that disposes of all claims and all parties or contains an express determination that an immediate appeal would facilitate a resolution of the entire case. *See* Pa.R.A.P. 341(b)(1), (3); *K.H. v. J. R.,* 573 Pa. 481, 490, 826 A.2d 863, 869 (2003).

264, 271–72, 836 A.2d 42, 46 (2003); *Ben v. Schwartz*, 556 Pa. 475, 483, 729 A.2d 547, 551–52 (1999). Here, the merits of the substantive claims contained in the PCRA petition are completely independent of whether Appellee was competent to waive his state postconviction rights. As such, those claims need not be considered in reviewing the PCRA court's competency determination. Consequently, the separability factor is satisfied.

■ We next consider the importance criterion, that is, whether the interests at stake are too important to be denied review. The interests presently at issue are Appellee's right to proceed pro se and to waive his post-conviction appeals, as well as society's interest in the finality of criminal proceedings. The timely assertion of a post-conviction challenge to· a sentence of death often leads to protracted litigation that usually includes one or more appeals to this Court. In most instances, the inmate remains on death row during such proceedings, while the victim's family and the community bear the uncertainty associated with the substantial delay that ensues.

■ As concerns the inmate, the right of self-determination in the capital postconviction arena has been recognized as subsuming an important liberty interest. In *Commonwealth v. Watson*, 597 Pa. 483, 952 A.2d 541 (2008), the Court developed that "there is a liberty interest implicated in this case.... A death row inmate enjoys the right to personally determine whether he wishes to institute a collateral attack upon a final judgment and sentence of death." *Id.* at 505, 952 A.2d at 554; *cf. McKaskle v. Wiggins*, 465 U.S. 168, 177, 104 S.Ct. 944, 950, 79 L.Ed.2d 122 (1984) (explaining that the right of self-representation at trial, recognized in *Faretta v. California*, 422 U.S. 806, 819–20, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), "exists to affirm the dignity and autonomy of the accused"); *Gallo v. United States*, 331 F.Supp.2d 446, 447–48 (E.D.Va.2004) (indicating that the federal statutory right to proceed pro se "reflects a policy of allowing individuals to conduct their own litigation in the manner they choose"). As concerns the victim's family and the community, *Watson* also

referenced the need for finality in criminal proceedings as an "enduring societal interest" and "one of the law's very objects." *Id.* at 503, 952 A.2d at 552 (quoting *Commonwealth v. Sam*, 597 Pa. 523, 952 A.2d 565 (2008), in turn quoting *McCleskey v. Zant*, 499 U.S. 467, 491, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517 (1991)). After expounding upon these values at some length, *Watson* ultimately held that "the finality interests implicated by the instant appeal are of such importance that this Court should grant review." *Id.* at 505, 952 A.2d at 554.

■ Although *Watson* did not involve an identical situation to the present one, in all material respects it was directly analogous.[11] Based on *Watson*'s reasoning and its status as precedent, then, we conclude that the importance criterion is satisfied in the present dispute. *See generally Sam*, 597 Pa. at 537 n. 10, 952 A.2d at 573 n. 10 (following *Watson*).

The final prerequisite, irreparability, gives us some pause. If the PCRA court's competency ruling is deemed erroneous on final review, Appellee would appear to be able to discharge counsel and withdraw his PCRA petition at that juncture. In this limited respect, then, the present situation may be distinguished from *Watson*, which involved whether the prisoner could be medicated—an issue that would "simply disappear[ ] forever" if not immediately reviewed. *Watson*, 597 Pa. at 502, 952 A.2d at 552. Although the present case may be distinguishable on such grounds, there are at least two reasons why we do not view the distinction as determinative of the issue. First, insofar as a significant delay may ensue absent collateral review, the irreparability inquiry overlaps substantially with the importance criterion for reasons that are apparent from the discussion above pertaining to the societal interest in finality. Thus, where foundational decisions concerning

11. In *Watson,* as in this case, a death-row inmate wished to discharge his attorney and withdraw his PCRA petition. When he was deemed incompetent to do so, the Commonwealth sought to have him medically treated to restore his competence and, correlatively, his ability to decide whether to pursue a post-conviction challenge (as opposed to having the question decided by the inmate's putative next friends). The PCRA court denied the request, and the Commonwealth appealed the denial.

whether to allow a death-row inmate to discharge counsel and waive his post-conviction rights are at issue, the irreparability criterion necessarily entails a consideration of the harm caused to the community from any substantial delay in obtaining review.

Aside from society's interest in finality, delaying review would also result in a distinct injury to the prisoner's right to represent himself and make his own decisions concerning post-conviction proceedings. In particular, he would be forced to proceed with litigation he has stated he does not wish to pursue, possibly (as here) represented by an attorney he does not trust and with whom he refuses to communicate. *See generally In re Continental Inv. Corp.*, 637 F.2d 1, 5 (1st Cir.1980) ("Whether a claim ... would be incapable of vindication on appeal from final judgment turns on whether irreparable harm would result to appellants, not from the district court order itself, but from a delay in obtaining appellate review of it." (internal quotation marks and citations omitted)). Addressing such concerns, one federal appellate court has explained:

> Although we recognize that a trial court's order requiring counsel is in part remediable after final judgment ..., we believe that the right to represent one's self is effectively lost if not immediately vindicated. The harm in erroneously denying a party leave to proceed pro se is that it injures his/her dignity and autonomy, and this harm cannot be repaired after a judgment on the merits. Moreover, this harm exists quite apart from any prejudice a party might incur from trying his/her case with an unwanted attorney....

*Devine v. Indian River Cnty. Sch. Bd.*, 121 F.3d 576, 581 (11th Cir.1997) (citations and footnotes omitted), *overruled on other grounds, Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007). We find the reasoning of the Eleventh Circuit persuasive and conclude that the final criterion for appellate review as a collateral order, irreparability, is satisfied.

Still, counsel urges that Rule 313 does not apply unless a controlling question of law is involved. *See* Brief for Appellee at 21 (citing *Pridgen v. Parker Hannifin Corp.*, 588 Pa. 405, 421 n. 11, 905 A.2d 422, 432 n. 11 (2006)). Insofar as the statutory and rule-based jurisdictional provisions are concerned, the controlling-question-of-law terminology appears in reference to interlocutory appeals by permission, *see* 42 Pa. C.S. § 702(b), but it is absent from Rule 313, which instead speaks in terms of the importance of the rights involved and the irreparable loss of claims. Additionally, *Pridgen* developed that the question-of-law rule pertains as set forth in *Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), where the rule was described as a means of ensuring fulfillment of the "separateness" prerequisite, as otherwise "it will often prove difficult to find [a question] that is significantly different from the fact-related legal issues that likely underlie the plaintiff's claim on the merits." *Id.* at 314, 115 S.Ct. at 2157. It is not clear that such reasoning applies in a case where, as here, the topic addressed by the order appealed from is entirely separate and distinct from the merits of the case, as developed above. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, 113 S.Ct. 684, 689, 121 L.Ed.2d 605 (1993) (declining to apply the question-of-law litmus to an interlocutory order denying a claim of Eleventh–Amendment state sovereign immunity, since the immunity issue was unrelated to the merits of the underlying lawsuit). Finally, even if we were to assume, *arguendo*, that a question-of-law prerequisite pertains, the Commonwealth has raised and preserved the legal issue of whether the PCRA court was required to proceed as set forth in *Bronshtein*. Accordingly, nothing in *Pridgen* impedes our present review.

## III. Competence

We come now to the substantive issue in this appeal: whether the PCRA court's conclusion that Appellee was incompetent to waive his state post-conviction rights should be affirmed. We recognize, initially, that whether a prisoner is competent to waive his rights, and whether he knowingly,

intelligently, and voluntarily does so, may be distinct matters. *See Godinez v. Moran,* 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680, 2687 n. 12, 125 L.Ed.2d 321 (1993); *Commonwealth v. Puksar,* 597 Pa. 240, 275, 951 A.2d 267, 288 (2008) (differentiating between mental competence to waive mitigation, and the validity of the waiver as assessed by the adequacy of the waiver colloquy); *accord State v. D'Antonio,* 274 Conn. 658, 877 A.2d 696, 730 (2005). The PCRA court never conducted a colloquy to determine the quality of Appellee's waiver because of its threshold ruling that Appellee was incompetent to waive.

As to that ruling, the parties agree that it should be affirmed absent an abuse of discretion. *See* Brief for Commonwealth at 16; Brief for Appellee at 26. This is consistent with the review standard that has been articulated for competency determinations in other contexts. *See, e.g., Commonwealth v. Pruitt,* 597 Pa. 307, 324, 951 A.2d 307, 317 (2008) (competence to stand trial); *Commonwealth v. Banks,* 612 Pa. 56, 66, 29 A.3d 1129, 1135 (2011) (competence to be executed). *Banks* explained that a deferential inquiry is appropriate because "the trial court ha[s] the opportunity to hear the necessary expert testimony and observe the condemned firsthand," thus giving it an advantage in assessing the individual's mental state. *Id.; accord Commonwealth v. Bomar,* 573 Pa. 426, 475, 826 A.2d 831, 860 (2003). These factors apply equally to competence-to-waive rulings. An abuse of discretion occurs where the court reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will. *See Commonwealth v. Flor,* 606 Pa. 384, 431–32, 998 A.2d 606, 634 (2010). Merely that an appellate court might have reached a different conclusion is insufficient to demonstrate an abuse of discretion. *See Commonwealth v. Eichinger,* 591 Pa. 1, 31, 915 A.2d 1122, 1140 (2007).[12]

---

12. Although the parties agree on the review standard, it is somewhat awkward to suggest that competence to waive or exercise one's rights is a matter committed to the common pleas court's "discretion." It seems, rather, that a competency ruling involves fact-finding and application of a legal standard to the facts, and, as such, may be viewed as a mixed question of law and fact. *See United States v. Makris,* 535 F.2d

In arguing that the PCRA court abused its discretion, the Commonwealth asserts three claims: that the court was legally required to hold a *Bronshtein* colloquy; that it erred by not appointing separate counsel to represent Appellee in the competency proceedings; and that it erred by excluding testimony from one or more attorneys who had represented Appellee at earlier stages of the criminal proceedings.

## A. *Bronshtein* hearing

In its first assignment of error, the Commonwealth contends that the PCRA court failed to apply what it views as the governing law, namely, that Appellee's competence must be established pursuant to a colloquy along the lines of the one given in *Bronshtein. See supra* note 8. Unfortunately, the Commonwealth does not reference any other authority in its substantive argument, opting instead simply to develop that the underlying circumstances of this case closely mirror those in *Bronshtein. See* Brief for Commonwealth at 16–24. Counsel responds that the PCRA court acted within its discretion

899, 907 (5th Cir.1976) ("The question of competency, of course, is a mixed question of law and fact which has direct constitutional repercussions."). *See generally State v. Byrge*, 237 Wis.2d 197, 614 N.W.2d 477, 486–91 (2000) (surveying authorities). Within such a context, factual findings are reviewed deferentially and will be upheld where they are fairly supported by the record, *see Maggio v. Fulford*, 462 U.S. 111, 118, 103 S.Ct. 2261, 2264, 76 L.Ed.2d 794 (1983), while identification of the appropriate legal standard and its application to the facts may be reviewed non-deferentially. *See O'Rourke v. Commonwealth*, 566 Pa. 161, 170 n. 7, 778 A.2d 1194, 1199 n. 7 (2001) ("Although we accord deference to a trial court with regard to factual findings, our review of legal conclusions is *de novo.*"). Presumably, courts have used the abuse-of-discretion rubric to signify the affordance of some deference. We simply observe that this may be something of a misnomer because the deference derives more from the role and respective vantage of the factfinder than from any accordance of "discretion." *See generally Murray v. Utah Labor Comm'n*, 308 P.3d 461, 472 (Utah 2013) ("[T]he question of whether certain facts fulfill a legal standard has a single 'right' answer.... Our precedent on mixed questions simply reflects the idea that we, as an appellate court, are not always in the best position to say what that 'right' answer is. Thus, in the context of mixed questions, we sometimes afford deference to a trial court's decision as a matter of institutional competency. But the trial court does not have discretion to reach anything other than the 'right' answer. In other words, 'discretion' and 'deference' are distinct concepts." (footnotes omitted)).

because its ruling was based on the opinions of two neutral, court-appointed experts who conducted a thorough review and concluded that Appellee suffers from personality disorders that prevent him from understanding the legal process to which he is subject. Counsel disputes that *Bronshtein* represents the only relevant case law, and suggests that the Commonwealth's argument is overly simplistic. In this regard, counsel proffers that competence pertains to whether the prisoner is capable of making a rational decision to forgo his rights, whereas courtroom colloquies are utilized to ensure that a competent inmate's waiver is knowing, intelligent, and voluntary. *See* Brief for Appellee at 37 (quoting *Commonwealth v. Williams*, 573 Pa. 613, 632–33, 828 A.2d 981, 992 (2003) ("A valid waiver is one in which the defendant knowingly, intelligently, and voluntarily waived his rights to counsel and post-conviction review and *was competent when he did so.*" (emphasis altered))).

The circumstances in *Bronshtein* do bear some close similarities to this case.[13] Unlike here, though, after the initial psychiatric evaluation the PCRA court permitted counsel to colloquy the prisoner in open court. Based on that colloquy, the PCRA court determined that Bronshtein was competent and that he knowingly, intelligently, and voluntarily waived his right to seek post-conviction relief—a ruling that this Court affirmed on appeal. *See Bronshtein*, 556 Pa. at 553–55, 729 A.2d at 1106. Thus, it is understandable that the Commonwealth would submit that the same procedure should have been followed in this case. The difficulty with the Commonwealth's argument is that there is nothing in *Bronshtein* that suggests the PCRA court was *required* to proceed as it did,

---

13. In *Bronshtein*, as here, although the inmate did not necessarily agree with the guilt-phase verdict, he understood that: the death sentence was based on it; waiving his post-conviction rights could result in his death; and death is final. Bronshtein was also aware that the lawyers representing the putative next friends believed there were potentially meritorious issues that could be raised in a PCRA petition. As well, he had been examined by one mental-health expert at the court's request, with inconclusive results, but he refused further interviews, alleging in his courtroom colloquy that any additional psychiatric evaluation would only serve the interests of "unethical lawyers making claims to their agenda." *Bronshtein*, 556 Pa. at 553, 729 A.2d at 1105.

only that the court acted within its discretion in doing so. The question becomes, then, whether there is any other basis to conclude that the PCRA court in this case was obligated to colloquize Appellee as the court did in *Bronshtein* before reaching a determination as to his competence.

Nothing in our case precedent establishes that an in-court waiver colloquy is necessary before a common pleas court may rule on an individual's competence to waive his rights. To the contrary, there have been instances in which competency determinations were made without a colloquy directed to that purpose. In *Commonwealth v. Zook,* 585 Pa. 11, 887 A.2d 1218 (2005), for example, this Court affirmed a competency ruling in the collateral-review setting where no particularized colloquy was held, notwithstanding that the inmate testified at the competency hearing. In that matter, like here, the prisoner was found to be suffering from paranoid delusions or distorted thinking, and the PCRA court relied on the testimony of several mental-health experts in ruling on his competence. The competency standard approved in that case, moreover, was whether the individual could understand the process and goals of PCRA proceedings and assist in that process to the extent required, given the specific legal and factual issues remaining to be litigated. *See id.* at 22, 887 A.2d at 1224–25.[14]

While such a standard may overlap conceptually with the litmus for determining whether a waiver is valid, it does not follow that an in-court colloquy is necessary to make a threshold competency determination. Nor do we see why a common pleas court would be incapable of making such an assessment

14. The PCRA court in *Zook* fashioned its competency standard by looking to the Mental Health Procedures Act, 50 P.S. §§ 7101–7503, for guidance. That enactment provides:

> Whenever a person who has been charged with a crime is found to be substantially unable to understand the nature or object of the proceedings against him or to participate and assist in his defense, he shall be deemed incompetent to be tried, convicted or sentenced so long as such incapacity continues.

50 P.S. § 7402(a). Although the provision is illustrative, by its terms it does not apply after imposition of the sentence. *Accord Commonwealth v. Jermyn,* 539 Pa. 371, 376, 652 A.2d 821, 823 (1995). Still, *Zook* found that the PCRA court had acted reasonably by using the statute as a guide.

by relying on the professional opinions of mental-health experts expressed within a reasonable degree of medical, psychiatric, or psychological certainty, as occurred here. Certainly, the parties have not directed us to any authority tending to suggest such an inability, and, as noted, in other settings common pleas judges have made competency findings without a colloquy. *See, e.g., Commonwealth v. Williams,* 581 Pa. 57, 73, 863 A.2d 505, 514 (2004) (competence to stand trial); *Commonwealth v. Kontaxes,* 584 Pa. 1, 4, 880 A.2d 591, 593 (2005) (competence to waive an insanity defense).

Furthermore, this case is similar to *Zook.* The PCRA court found, based on its own observations and the assessments of the mental-health experts, that Appellee tends to be delusional and to imagine that persons who are in a position to assist him are actually involved in a conspiracy to harm him. For example, Appellee formed a belief that the only reason Drs. Vant Zelfde and Shah wished to interview him a second time was that they had been conferring with the federal defenders and were seeking to use the second interview against him, although it does not seem that he could have had any factual foundation for that belief. Additionally, at the hearing it was revealed that Appellee had previously concluded that the trial judge was fabricating evidence against him, *see* N.T., Jan. 17, 2012 (day session), at 202–03, again, without any apparent basis in reality for such an assumption.

Finally, although Appellee did not testify directly as did the post-conviction petitioner in *Zook,* he did cross-examine Drs. Shah and Vant Zelfde for several hours at the competency hearings in June 2011 and January 2012. Such cross-examination consisted primarily of a lengthy series of verbose questions through which Appellee sought to justify all of his actions, no matter how miniscule, by describing his rationale and attempting to elicit a response that the expert witness agreed with the proffered justification. Notably, Appellee engaged in this tactic even at a time when the mental-health experts were in agreement with his position that he was competent to waive his rights, *i.e.,* at the June 2011 hearing. We have no basis for differing with the PCRA court's assess-

ment that this type of "cross-examination" was equivalent to direct testimony for purposes of the competency ruling, since it just as effectively revealed information concerning Appellee's thought processes. *See Wright I, slip op.* at 14 ("The reality is we have heard *hours* of testimony from [Appellee] already. [Appellee's] prolonged questioning ... ha[s] provided the [c]ourt a unique opportunity to observe him.").

 In light of the above, the record adequately supports a conclusion that Appellee's understanding of the nature and object of the present post-conviction proceedings was so substantially impaired that he was unable meaningfully to participate or assist counsel in that process. This conclusion was bolstered, moreover, by evidence concerning Appellee's limited cooperation with virtually every attorney who has represented him since the underlying offense took place. Under such circumstances, we conclude that the PCRA court acted within its discretion in finding Appellee incompetent without first holding a colloquy along the lines of the one approved in *Bronshtein.*[15]

15. We note parenthetically that it was not entirely clear at the hearing whether Appellee was seeking to discharge counsel and pursue federal habeas claims *pro se*—a course that would be questionable absent exhaustion of state remedies, *see Commonwealth v. Ali,* 608 Pa. 71, 129–30, 10 A.3d 282, 317–18 (2010) (citing *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971))—or whether he instead wished to forgo collateral litigation altogether and proceed directly to execution. Appellee's federal pleadings were inconsistent on this point, and his statements to the court-appointed experts were ambiguous. *See, e.g.,* Report of Drs. Shah and Vant Zelfde, April 14, 2011, at 4 (reflecting that Appellee had stated, during the April 2011 examination, "If they're not going to allow me to prove my innocence, or give me the tools to do so, then give me the death sentence."). In its opinions in *Wright I* and *Wright II,* moreover, the common pleas court did not discuss the matter or set forth what it viewed to be the applicable legal standard for competence.

In view of such omissions, we might ordinarily deem it appropriate to remand for clarification of Appellee's objectives and application of the appropriate test for competence in the circumstances. *Compare Rees v. Peyton,* 384 U.S. 312, 314, 86 S.Ct. 1505, 1506, 16 L.Ed.2d 583 (1966) (*per curiam* ) (setting forth the test for competence to terminate all post-conviction proceedings), and *Rumbaugh v. Procunier,* 753 F.2d 395, 398 (5th Cir.1985) (fashioning a three-pronged test based on Rees), with *Zook,* 585 Pa. at 22, 887 A.2d at 1224–25 (approving a standard based on the Mental Health Procedures Act for competence to continue with

Finally, we acknowledge the Commonwealth's argument that the "central issue regarding [Appellee's] competency in this matter" pertains to Appellee's understanding of the reasons for the death penalty and its implications. *See* Brief for Commonwealth at 22–23. If this were the sole relevant inquiry, the PCRA court's ruling would be difficult to support in view of the expert testimony, summarized above, concerning Appellee's understanding of the death penalty and why it was imposed on him. The Commonwealth overlooks, however, that this represents the standard for competence to be executed, *see Ford v. Wainwright*, 477 U.S. 399, 417, 106 S.Ct. 2595, 2606, 91 L.Ed.2d 335 (1986); *Bronshtein*, 556 Pa. at 550–51, 729 A.2d at 1104–05 (quoting *In re Heidnik*, 554 Pa. 177, 180, 720 A.2d 1016, 1017–18 (1998)), and, as such, it was not the sole relevant inquiry during the proceedings in the common pleas court. Accordingly, the Commonwealth is not entitled to relief on its first assignment of error.

## B. Separate counsel for Appellee

The Commonwealth next contends that the common pleas court erred by failing to appoint separate counsel for Appellee during the competency proceedings. The Commonwealth observes that Appellee's appointed counsel could not conduct the questioning for Appellee due to their "awkward adversarial position to him," Brief for Commonwealth at 25, and that, as a consequence, counsel agreed that the lawyers from the Philadelphia FCDO should question the witnesses on behalf of both sets of attorneys. The Commonwealth proffers that Appellee was therefore effectively left with no counsel to assist him. Although Appellee's stated interests on the competency issue were aligned with those of the Commonwealth, *i.e.*, advocating for a ruling that Appellee was competent to waive his rights, the Commonwealth develops that it was not in a position to

PCRA proceedings, thus precluding participation by putative next friends). Here, however, the Commonwealth's sole claim is that the PCRA court was not permitted to assess competence without first holding a *Bronshtein* colloquy. Since we disagree, based on *Rees* and *Zook*, that such a hearing is a necessary prerequisite under either standard, a remand along these lines is unnecessary.

advise Appellee. The Commonwealth takes particular exception because the FCDO attorneys, and the PCRA court itself, used Appellee's *pro se* participation in the hearing to bolster a finding of incompetence.

Counsel generally disputes that the common pleas court had an obligation to provide Appellee with an additional attorney. Counsel additionally offers that, when the Commonwealth first raised the issue in court on January 18, 2012 (the last day of the competency hearing), it clarified that its request was limited to standby counsel to assist Appellee in two discrete contexts: for purposes of a *Bronshtein* colloquy, and to advise Appellee concerning whether he should waive his attorney-client privilege if any of Appellee's former attorneys were called as fact witnesses. Counsel continues that the PCRA court's finding of incompetence obviated the need for a colloquy, and that Appellee's prior attorneys never testified because the court deemed their testimony irrelevant. Therefore, counsel continues, the lack of standby counsel could not have prejudiced Appellee.

Our review of the record confirms that the Commonwealth's request was more limited than it now portrays. The Commonwealth first mentioned the idea of providing separate counsel for Appellee at an in-camera status conference in November 2011. At that juncture, the June 2011 testimonial proceedings, at which Appellee cross-examined the expert witnesses, had already occurred. Moreover, as counsel points out, the Commonwealth waited until January 18, 2012—the final day of the hearing—to place its request on the record,[16] suggesting that it was only requesting standby counsel for purposes other than in relation to the expert testimony. This conclusion is supported by the reasons the Commonwealth gave to the PCRA court to support its request. *See* N.T., Jan. 18, 2012, at 2 (reflecting the Commonwealth's explanation that "[h]e's going to be colloquied. He should ... have stand-by counsel to refer to relative to that."); *id.* at 1–2 (referring to

16. By that time, Dr. Vant Zelfde had testified and been cross-examined by Appellee the previous day, and Dr. Shah was the only remaining witness.

the need for stand-by counsel as being "even more imperative" because "[t]here are attorneys that represented him that are going to testify in this matter.").

The ensuing discussions are to a similar effect. After the Commonwealth made its motion as outlined above, the PCRA court recited its understanding of the motion as being directed to "later in the proceeding" rather than to "these court appointed experts." *Id.* at 4. The court continued that Drs. Shah and Vant Zelfde "are my witnesses. So in terms of them, any need that we might perceive for court appointed counsel just isn't there." *Id.* at 4. Based on such understanding, the court suggested to the Commonwealth that it would "preserve" the Commonwealth's motion for a future time, *id.*, and asked, "Does that seem like a sensible way to proceed today?" *Id.* at 6. The Commonwealth responded, "[T]hat's what I expected so I have no problem." *Id.* Later in the day, moreover, after Dr. Shah had finished testifying, the subject arose again, with the discussion of standby counsel limited to the same two settings. *See id.* at 61 (standby counsel relative to testimony by Appellee's former lawyers); *id.* at 91 (standby counsel for a *Bronshtein* colloquy).

There is no indication in any of these exchanges that the Commonwealth was asking for an appointment of separate counsel for Appellee during the expert-testimony portion of the hearing. *See, e.g., id.* at 3 (reflecting the Commonwealth's remark that "I don't think anything would have been accomplished by having a lawyer here during this hearing, but a lot will be accomplished if this case goes further...."). We therefore agree with counsel that the Commonwealth's request pertaining to standby counsel did not relate to the testimony of the expert witnesses. As to those proceedings, therefore, there is no preserved issue for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

## C. Exclusion of attorney testimony

In its final claim, the Commonwealth maintains—in an argument that spans little more than one page of its brief and

contains no citation to authority—that the PCRA court abused its discretion by excluding testimony from "five or six" of Appellee's former attorneys. Brief for Commonwealth at 28. The Commonwealth contends that, in reaching a conclusion that Appellee is incompetent, the PCRA court's mental-health experts and the court itself relied in substantial part on the premise that Appellee was unable or unwilling to cooperate with many of his prior counsel. The Commonwealth concludes that the proffered testimony concerning the level of cooperation displayed by Appellee was needed to rebut such a premise, and, accordingly, excluding it amounted to an abuse of discretion.

Counsel responds that, during the proceedings, the Commonwealth's offer of proof was vague and additionally included an admission that, on cross-examination, the attorneys in question would describe the ways in which Appellee refused to cooperate with them. *See* N.T., Jan. 18, 2012, at 59. Moreover, according to counsel, the PCRA court was already well aware of the level of cooperation, or lack thereof, displayed by Appellee vis-à-vis his previous attorneys, since the same judge had presided over some of Appellee's pre-trial motions, his trial, and his post-trial motions. Counsel additionally details that Appellee had "discharged" or "terminated" all of his previous counsel, and describes the adversarial relationship Appellee developed with Ralph Forr, Esq., who handled Appellee's direct appeal.[17] Finally, counsel notes that the PCRA court considered the testimony in question to be of little probative value and, as such, the court was permitted to exclude it. *See* Pa.R.E. 403 (allowing the exclusion of evi-

17. In this latter regard, counsel relates that, after Attorney Forr requested an extension of time to file his appellate brief, Appellee: wrote to this Court alleging that Attorney Forr had no excuse for requesting a time extension and asking this Court to issue an order directing him to file his brief by the original due date, and to take unspecified action against him; petitioned this Court to terminate Attorney Forr's representation; filed a disciplinary complaint against Attorney Forr; initiated a lawsuit against the Disciplinary Board alleging civil rights violations for failing to discipline Attorney Forr; and filed a civil rights complaint against Attorney Forr in the Court of Common Pleas, which was eventually dismissed with prejudice. *See* Brief for Appellee at 54–55.

dence where its probative value is outweighed by considerations of, *inter alia,* undue delay, waste of time, or needless presentation of cumulative evidence).

The decision to admit or exclude evidence is committed to the trial court's sound discretion, and its evidentiary rulings will only be reversed upon a showing that it abused that discretion. *See Commonwealth v. Laird,* 605 Pa. 137, 168, 988 A.2d 618, 636 (2010). The PCRA court noted that the particular level of cooperation between Appellee and his attorneys from many years ago, or the reasons underlying disagreements that Appellee may have had with his prior counsel, was largely irrelevant to the experts' opinions. Rather, the court continued, "it is the fact of the multiple attempts to discharge counsel rather than the individual *reasons* surrounding each attempt to discharge them that underlie [Appellee's] personality disorder." *Wright I,* slip op. at 13. In this regard, the PCRA court recited that it had "heard [Appellee's] accusations against virtually every authority figure who has touched the case." *Id.* Against this backdrop, the court concluded that the proffered testimony would have "no persuasive value." *Id.* at 14; *see also id.* at 13 ("[W]e are no longer in a position where nuances in relationships from 12 years ago hav[e] the ability to persuade.").

The Commonwealth's suggestion that the PCRA court abused its discretion lacks merit. The court, as noted, relied upon a pattern displayed by Appellee of distrusting, discharging, and cutting off all communications with, a long list of attorneys and other professionals who could have assisted Appellee's case. *Accord Wright II, slip op.* at 12–13. Such individuals included Drs. Shah and Vant Zelfde, who had originally come to a conclusion favorable to Appellee's stated interests. More generally, a review of the hearing transcripts supports the court's determination that Appellee is prone to engage in delusional and distorted thinking involving imagined conspiracies by such individuals, and that, based on such thinking, his ability to assist counsel in his own defense has been, and continues to be, significantly compromised. We

therefore find that the PCRA court acted within its discretion in concluding that listening to testimony concerning details of particular attorney-client relationships from the past would constitute a waste of the court's time, particularly where such details were not directly relevant to the basis on which the court ultimately determined Appellee to be incompetent. As developed by counsel, such a ruling falls within the scope of the court's discretionary latitude under evidentiary rule 403.

## IV. Participation by the Federal Community Defender Office

Having determined that the Commonwealth is not entitled to relief, we will affirm the PCRA court's order. On remand, it is expected that the putative next friends will assert that they have standing to litigate the existing PCRA petition on Appellee's behalf. *See Haag*, 570 Pa. at 303, 809 A.2d at 280 ("[A] prisoner need not be competent to proceed through PCRA proceedings when a next friend has been appointed to act on his or her behalf because of such incompetence."); *see also Heidnik*, 554 Pa. at 184–85, 720 A.2d at 1020 (setting forth standards for determining whether a putative next friend has standing). If this occurs, it will raise an issue concerning the appropriateness of the putative next friends' representation by the FCDO, since the source of that organization's authority to conduct proceedings in state court in the present case is not evident. Accordingly, such issue should be resolved in the first instance by the common pleas court on remand.[18]

18. *See Commonwealth v. Solano*, 620 Pa. 690, 70 A.3d 806 (2013) (*per curiam*) (citing 18 U.S.C. § 3599(a)(2), and directing the PCRA court on remand to determine whether counsel from the FCDO should continue to represent Solano in state capital PCRA proceedings absent a federal court order authorizing such representation); *Commonwealth v. Johnson*, 619 Pa. 387, 388–90, 64 A.3d 622, 623 (2013) (*per curiam*) (directing the PCRA court on remand to "determine whether current counsel from the Federal Community Defender's Office should continue to represent appellant in this state capital PCRA proceeding, or whether other appropriate post-conviction counsel should be appointed"); *Commonwealth v. Powell*, 615 Pa. 608, 608–09, 44 A.3d 1144, 1144–45 (2012) (*per curiam*) (same); *Commonwealth v. Sepulveda*, 618 Pa. 262, 333–34, 55 A.3d 1108, 1151 (2012) (plurality) (suggesting that the

## V. Conclusion

The judgment of the Court of Common Pleas is affirmed. On remand, the court shall determine the appropriateness of the FCDO's participation as counsel for putative next friends and preclude such participation if it is found to be unauthorized.

Chief Justice CASTILLE and Justices EAKIN, BAER, McCAFFERY and STEVENS join the opinion.

Justice TODD files a concurring and dissenting opinion.

Justice TODD, concurring and dissenting.

I join the Majority Opinion with the exception of the *sua sponte* directives in Parts IV and V. Specifically, therein, the Court instructs that, on remand, the post-conviction court should inquire into the source of the authority of the Federal Community Defender Organization ("FCDO") to represent Appellee's next friends (assuming they are granted standing), and "preclude such participation if it is found to be unauthorized." Majority Opinion at 474, 78 A.3d at 1087. I continue to maintain the position that any impropriety in the FCDO's representation in state court matters, if appropriately identified, should be dealt with in the normal course of disciplinary proceedings. *See Commonwealth v. Spotz,* 576 CAP, 2011 Pa. LEXIS 1713 (Pa. July 28, 2011) *(per curiam)* (Todd, J., dissenting); *Commonwealth v. Spotz,* 576 CAP, 2011 Pa. LEXIS 2368 (Pa. Oct. 3, 2011) *(per curiam)* (Baer, J., dissenting).

Furthermore, in this and related matters, this Court is proceeding on the basis, but without any explicit analysis, that

FCDO's participation may be unauthorized by federal court order or federal law, and directing the PCRA court on remand to determine whether to formally appoint appropriate post-conviction counsel); *Commonwealth v. Abdul–Salaam,* 615 Pa. 297, 299 n. 1, 42 A.3d 983, 984 n. 1 (2012) *(per curiam)* (observing that the FCDO had failed to cite any valid authorization for its conduct in relation to state PCRA proceedings); cf. *Commonwealth v. Porter,* 613 Pa. 510, 540, 35 A.3d 4, 22 (2012) (authorizing the common pleas court, if the FCDO "unduly delays matters," to appoint new counsel relative to a petition filed pursuant to *Atkins v. Virginia,* 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002)).

the FCDO's representation in such cases may be unlawful under federal law, and that counsel's disqualification is the appropriate remedy in such circumstances. *See, e.g., Commonwealth v. Mitchell*, 617 CAP, 2013 Pa. LEXIS 74 (Pa. Jan. 10, 2013) (*per curiam*). For reasons I have already expressed, I find such undeveloped summary dispositions to be troubling. *See id.* (Todd, J., dissenting). Moreover, I note that those legal bases have been called into question by several recent federal district court decisions resulting from the FCDO's efforts to remove to federal court inquiries into their state-court authorization.[1] *See In re Proceeding in Which the Commonwealth of Pennsylvania Seeks to Compel the Defender Ass'n of Philadelphia to Produce Testimony and Documents and to Bar it from Continuing to Represent Defendant in Commonwealth v. Mitchell*, 2013 WL 4193960 (E.D.Pa. Aug. 15, 2013) (hereinafter "*In re Mitchell*") (allowing removal and dismissing Commonwealth's proceeding to disqualify FCDO; holding there is no private right of action under 18 U.S.C. § 3599, state regulation in this area is preempted, and remedies for violation of Section 3599 relate to funding, not disqualification); *In re Commonwealth's Motion to Appoint New Counsel Against or Directed to Defender Ass'n of Philadelphia in Commonwealth v. Harris*, 2013 WL 4501056 (E.D.Pa. Aug. 22, 2013) (hereinafter "*In re Harris*") (allowing removal and dismissing Commonwealth's proceeding to disqualify FCDO; holding there is no private right of action under 18 U.S.C. § 3599); *In re Proceeding Before Court of Common Pleas of Philadelphia to Determine the Propriety of*

1. These removal efforts have met with mixed results as a jurisdictional matter. Of the federal courts which have addressed the FCDO's removals, three denied the Commonwealth's motion to remand the proceedings back to state court (and then went on to dismiss the proceedings against the FCDO)—those cited in the text—and three granted the Commonwealth's motion to remand. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Philadelphia in Commonwealth v. Dowling*, 2013 WL 4458848 (M.D.Pa. Aug. 16, 2013); *In re Commonwealth's Request for Relief Against or Directed to Defender Ass'n of Philadelphia in Commonwealth v. Dick*, 2013 WL 4458885 (M.D.Pa. Aug. 16, 2013); *In re Proceedings Before the Court of Common Pleas of Monroe County, Pa. to Determine Propriety of State Court Representation by Defender Ass'n of Philadelphia in Commonwealth v. Sepulveda*, 2013 WL 4459005 (M.D.Pa. Aug. 16, 2013).

476

*the Defender Ass'n of Philadelphia's Representation of William Johnson in Commonwealth v. Johnson,* 2013 WL 4774499 (E.D.Pa. Sept.6, 2013) (same, adopting *In re Mitchell* and *In re Harris* ).