J-S45033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.K.-R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: W.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1164 MDA 2023 |

Appeal from the Order Entered July 20, 2023
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-DP-0000163-2023

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E:                    **FILED: FEBRUARY 12, 2024**

Appellant, W.R. ("Father"), appeals from the order entered July 20, 2023, in the Court of Common Pleas of York County, that adjudicated his son, L.K.-R ("Child"), born in May 2019, dependent and found that Child was a victim of "child abuse" perpetrated by Father as defined at 23 Pa.C.S.A. § 6303.  Father also appeals from the order entered the same date finding

---

[*] Former Justice specially assigned to the Superior Court.

J-S45033-23

aggravated circumstances exist as to Father pursuant to 42 Pa.C.S.A. §§ 6302(3)(ii) and 6341(c.1).[1] After careful review, we affirm.[2]

The trial court precisely detailed the factual and procedural history in its opinion, as follows:

> On September 10, 2020, Father pled guilty to aggravated assault, strangulation, and endangering the welfare of children ("EWOC"). He was subsequently sentenced to eleven-and-a-half to twenty-three months in confinement followed by two years of probation. Child was the victim. *See* N.T.,

---

[1] Filing a single notice of appeal from multiple orders is discouraged. *See General Electric Credit Corporation v. Aetna Casualty and Surety Company*, 263 A.2d 448 (Pa. 1970) (one appeal from several judgments is discouraged as unacceptable practice and Supreme Court has quashed such appeals where no meaningful choice between them could be made); *see also* 20 Pa.P.R.A.C. § 512 (stating that one appeal from several orders is discouraged). However, our Supreme Court stated the following in *K.H. v. J.R.*, 826 A.2d 863 (Pa. 2003):

> Where a party specifies a particular part of a judgment or order in their notice of appeal, appellate review may nevertheless be extended to orders not identified in the notice of appeal if the specified and unspecified orders are connected, the intention to appeal the unspecified order is apparent, and the opposing party has not suffered prejudice and has had an opportunity to brief the issues.

*Id.* at 871. In the instant appeal, Father does, in fact, reference the aggravated circumstances order in his notice of appeal which demonstrates his intention to appeal the connected orders. Further, no party has suffered prejudice, and each had an opportunity to address the issues. Thus, we observe no impediment to our appellate review of the case at bar.

[2] Child's mother, G.K. ("Mother"), did not file a notice of appeal and did not participate in the instant appeals.

- 2 -

6/7/2023, at 9. Mother allegedly witnessed and filmed the assault.[3] *See* N.T., 7/17/2023, at 112.

Father was released from incarceration on February 28, 2021. *See* N.T., 6/7/2023, at 55. While Father was incarcerated, Child resided with Mother. At some point between October and December 2022, Mother placed Child in Father's care. *See id.* at 20. Father claimed Mother left Child in his care so she could go on a drug binge in Philadelphia. *See id.* at 19.

Since the approximate time Child was placed back in Father's care, he was the victim in three valid general protective services ("GPS") findings in Dauphin County. *See id.* at 17-18. Father was either alleged to be or was a validated perpetrator in those GPS findings. *See id.* at 19.

This dependency case began on May 6, 2023, when the York County Office of Children, Youth & Families ("CYF") received a child protective services ("CPS") referral regarding Child, alleging Father physically abused him and had stated he did not want to be a dad anymore. *See id.* at 10. Ashley Althoff, a CYF caseworker, performed a home visit and documented several injuries on and around Child's face. *See id.* at 11. Following Ms. Althoff's home visit, CYF filed a petition for emergency protective custody, which was granted by the undersigned on May 17, 2023.

Trial Court Opinion ("T.C.O."), 9/12/2023, at 1-3 (cleaned up).

Following a shelter care hearing on May 26, 2023, the court ordered

Child's temporary commitment to CYF's custody to stand. Child was placed in

---

[3] The court took judicial notice of the criminal complaint which alleged that Father "[threw Child] onto the bed and slapp[ed] him across the left side of his face." Criminal Complaint, 1/2/2020. The complaint further alleged that Father "grabbed [Child] around the neck with both hands, and shook him three times." *Id.* Mother witnessed the incident through a camera she setup in the room. *See id.*

a pre-adoptive foster home where he has remained. N.T., 6/7/2023, at 39-40. On May 30, 2023, CYF filed a dependency petition for Child, along with a motion requesting the finding that aggravated circumstances exist as to Father.

The court conducted evidentiary hearings on June 7, July 17, and July 19, 2023, respectively, at which time Child was four years old.[4] At the hearing, CYF presented the testimony of Ashley Althoff, CYF caseworker; Robert Baylor, Father's probation officer; Kathryn Crowell, M.D., a stipulated expert in child abuse pediatrics; Alexis Gilliam, D.D.S., a stipulated expert in pediatric dentistry; A.D. ("Foster Mother"); and Natalie Felker, CYF caseworker. Father testified on his own behalf and adduced the testimony of D.S., his mother, and J.A., his sister. Mother appeared *pro se* at the hearings, testified on her own behalf, and offered the testimony of A.R., her best friend and roommate.

Ms. Althoff testified that during her initial home visit on May 16, 2023, she observed marijuana in the living room. *See* N.T., 6/7/2023, at 17, 45. She further stated that during the visit, Father admitted he had a valid GPS

---

[4] Prior to the conclusion of the proceedings, on July 10, 2023, CYF filed a motion alleging serious physical neglect of Child due to Father's and Mother's failure to provide him with dental care. *See* Motion, 7/10/2023. The motion alleged that during a dental examination on June 8, 2023, the dentist discovered severe and widespread tooth decay. *See id.*

report in Dauphin County, but he claimed it was because he had lightly hit Child with two fingers, and Child was not injured. *See id.* at 11.

Dr. Crowell testified regarding the severity of Child's facial injuries. She examined photographs taken by CYF and performed a physical examination of Child on June 12, 2023. *See* N.T., 7/17/2023, at 9. She proffered that Child had a healing injury to his face and many bruises and abrasions to his shins, forearms, hands, and feet. *See id.* at 10. She concluded that Child was the victim of repetitive physical abuse. *See id.* at 16.

The testimony adduced by CYF also documented significant concerns regarding Child's oral health. Foster Mother testified that she brought Child to the dentist after he complained about pain in his teeth. *See id.* at 67. To ease his pain, she provided him with ibuprofen and Tylenol. *See id.* at 68. In order for Child to eat, Foster Mother stated that he crushes food with his tongue, instead of biting it. *See id.* at 69. She further stated that she had to teach Child how to brush his teeth. *See id.*

Dr. Gilliam examined Child's teeth and testified regarding the extensive decay. She stated that the extent of the decay was easily visible to the naked eye. *See id.* at 39. She further asserted that twelve of Child's teeth needed stainless steel crowns and another two possibly required extraction. *See id.* Dr. Gilliam diagnosed Child with severe early childhood cavities and that he would experience pain and discomfort, especially when eating hot, cold, or sweet foods. *See id.* at 43-44, 46.

Father largely denied the allegations made against him. He countered that the marijuana Ms. Althoff saw during her initial visit was actually ash from incense his roommates had burned. *See id.* at 89. He admitted that a video showed him committing the actions described in the criminal complaint and led to his convictions related *supra*, but he subsequently insisted that he only struck Child with two fingers. *See id.* at 112-113. Father stated that he had not attended a batterer's intervention or anger management program as required by the terms of his probation. *See id.* at 122. However, between the June 7 and July 17 hearing, Father testified that he had finally found an anger management program. *See id.* at 90. Father also indicated that he has no income and no money in his bank account. *See id.* at 113-116. However, he stated that he was offered a job at Domino's Pizza which he intended to start after these proceedings concluded. *See id.* at 91.

Father claimed that he attempted to take Child to the dentist but was unable to obtain Child's insurance information through Mother. *See id.* at 99. He further asserted that after failing to obtain Mother's insurance information, he tried to get Child to a dentist, but he never followed through. *See id.* Finally, Father denied physically harming Child and proffered explanations for some of Child's injuries. *See id.* at 108. Specifically, Father insisted that an injury to Child's right orbital occurred when Child was climbing on a bin, slipped on a stack of magazines, and hit his face on the corner of a table. *See id.* a 104-105. Father also testified that an injury to Child's chin occurred

when he fell running down a ramp at a family party and that an injury to the left side of Child's face occurred while Mother cared for Child.[5] *See id.* at 106-108.

Father's mother and sister also testified regarding Child's injuries. However, the accounts of Father, his mother, and his sister varied factually as to what happened to Child and which injuries occurred during each incident.

By order entered July 20, 2023, the trial court adjudicated Child dependent, and found that Father was the perpetrator of "child abuse" as defined by 23 Pa.C.S.A. § 6303. The order also determined Child's permanency goal to be adoption, with a concurrent goal of permanent legal custody of a non-relative, discontinued visitation for Father, and excused CYF from providing services to Father. By separate order, entered the same date, the court submitted a finding of aggravated circumstances and indicated that no efforts were to be made to preserve the family and reunify Child with Father. On August 17, 2023, Father timely filed a notice of appeal along with a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the trial court filed its Rule 1925(a) opinion on September 12, 2023.

On appeal, Father raises the following issues:

---

[5] Father testified that he only left Child with his mother on one occasion, and rarely lets Child out of his sight. *See* N.T., 7/17/2023, at 117-118.

1.      Whether the trial court erred in finding that the agency had met its burden to establish dependency by clear and convincing evidence?

2.      Whether the trial court must first find dependency before hearing evidence on aggravating factors and whether the trial court erred in taking evidence on aggravating factors before an adjudication of dependency?

3.      Whether the trial court erred in finding by clear and convincing evidence that the Child was a victim of child abuse by Father as to physical abuse as defined in 23 Pa.C.S.[A.] § 6303?

4.      Whether the trial court erred in finding that the Child was a victim of child abuse, as defined in 23 Pa.C.S.[A.] § 6303, as a result of dental decay when the issue was not raised in the initial petition nor was any amended dependency petition filed?

5.      Whether the trial court erred in finding that the agency was not required to provide services to Father as a result of the finding of aggravated circumstances?

6.      Whether the trial court erred in setting the goal as adoption without first attempting to implement services or any attempts to seek reunification with Father?

7.      Whether the trial court erred in directing that no visitation occur between the [] Child and Father?

Father's Brief at 6-7 (cleaned up).

Our standard of review for dependency cases is as follows.

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require

- 8 -

the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (cleaned up).

This Court has stated:

> To adjudicate a child dependent based upon lack of parental care or control, a juvenile court must determine that the child:
>
> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.
>
> 42 Pa.C.S.A. § 6302(1).
>
> In accordance with the overarching purpose of the Juvenile Act "to preserve family unity wherever possible," *see* 42 Pa.C.S.A. § 6301(b), a child will be declared dependent only when he is presently without proper parental care or control, and when such care and control are not immediately available. *In the Interest of R.T.*, 592 A.2d 55, 57 (Pa. Super. 1991). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *C.R.S.*, 696 A.2d at 845.

*In re M.B.*, 101 A.3d 124, 127-128 (Pa.Super. 2014). Additionally, this Court has stated "'[a] finding of abuse may support an adjudication of dependency.'"

*In re I.R.-R.*, 208 A.3d 514, 520 (Pa.Super. 2019) (citation omitted).

Regarding child abuse, our Supreme Court has explained that "a petitioning party must demonstrate the existence of child abuse by the clear

and convincing evidence standard applicable to most dependency determinations. . . ." *In the Interest of L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015). This Court has stated that "clear and convincing evidence" requires:

> that the witnesses must be found to be credible; that the facts to which they testify are distinctly remembered and the details thereof narrated exactly and in due order; and that their testimony is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue. It is not necessary that the evidence be uncontradicted provided it carries a clear conviction to the mind or carries a clear conviction of its truth.

*In the Interest of J.M.*, 166 A.3d 408, 423 (Pa.Super. 2017) (citation omitted).

Section 6303 of the Child Protective Services Laws ("CPSL") defines "child abuse" as follows, in relevant part,

> **(b.1) *Child abuse.*** — The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:
>
> **(1)** Causing bodily injury to a child through any recent act or failure to act.
>
> **. . .**
>
> **(7)** Causing serious physical neglect of a child.

23 Pa.C.S.A. § 6303(b.1)(1), (7). In addition, Section 6303 defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a).

The identity of the perpetrator of child abuse "need only be established through *prima facie* evidence in certain situations. . . ." ***In re L.Z.***, 111 A.3d at 1174. ***Prima facie*** evidence is "[s]uch evidence as, in the judgment of the law, is sufficient to establish a given fact, or the group or chain of facts constituting the party's claim or defense, and which if not rebutted or contradicted, will remain sufficient." ***Id.*** at 1184 (citing Black's Law Dictionary 825 (6th ed. abridged 1991)). Section 6381(d) of the CPSL provides as follows:

> **(d)** ***Prima facie evidence of abuse.*** — Evidence that a child has suffered child abuse of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for the welfare of the child shall be prima facie evidence of child abuse by the parent or other person responsible for the welfare of the child.

23 Pa.C.S.A. § 6381(d). The ***L.Z.*** Court held:

> [E]vidence that a child suffered injury that would not ordinarily be sustained but for the acts or omissions of the parent or responsible person is sufficient to establish that the parent or responsible person perpetrated that abuse unless the parent or responsible person rebuts the presumption. The parent or responsible person may present evidence demonstrating that they did not inflict the abuse, potentially by testifying that they gave responsibility for the child to another person about whom they had no reason to fear or perhaps that the injuries were accidental rather than abusive. The evaluation of the validity of the presumption would then rest with the trial court evaluating the credibility of the *prima facie* evidence presented by the CYS agency and the rebuttal of the parent or responsible person.

- 11 -

*In re L.Z.*, 111 A.3d at 1185 (footnote omitted).

In his first issue, Father argues that CYF did not provide clear and convincing evidence that he caused physical harm to Child or that his purported conduct put the health, safety, or welfare of Child at risk. **See** Father's Brief at 16. Father contends that CYF did not meet its burden to establish that Father caused any of the injuries to Child, even if this Court accepts the testimony of Dr. Crowell, the expert in child abuse pediatrics. **See id.** at 17. Father further asserts that the trial court improperly considered Child's dental decay as a basis for dependency because the allegation was not raised in CYF's dependency petition and CYF did not file an amended petition to include this allegation. **See id.** at 17-18.

Although framed as a separate claim for relief, the arguments presented in Father's third issue are closely related to these allegations. In Father's third presented issue, he argues that the trial court erred in finding by clear and convincing evidence that Child was a victim of child abuse by Father as to physical abuse defined in 23 Pa.C.S.A. § 6303. **See** Father's Brief at 24. Father posits that "bodily injury" is defined as an "impairment of physical condition or substantial pain." 23 Pa.C.S.A. § 6303(a). Father asserts that Dr. Crowell merely stated that Child would experience "pain" because of the injuries and, consequently, he argues that there was no testimony establishing that Child would have suffered "substantial pain." Viewed together, Father's first and third claims for relief essentially challenge the court's findings with

respect to Child's adjudication of dependency. Accordingly, we will review these arguments collectively.

Initially, Father's argument that the court improperly considered Child's dental decay as a basis of dependency is without merit. As related *supra*, Foster Mother brought Child to the dentist after he complained of pain in his mouth. *See* N.T., 7/17/2023, at 67. Thereafter, Foster Mother brought Child to the dentist on June 8, 2023, which revealed extensive dental decay. In the interim of the dependency proceedings, on July 10, 2023, CYF filed a motion to incorporate allegations of "serious physical neglect" pursuant to 23 Pa. C.S.A. § 6303(b.1)(7). Although not styled as a modification to the dependency petition, CYF informed Father of its intention to offer evidence on Child's extensive dental decay. Father does not cite any law nor are we aware of any that would preclude the trial court from considering this allegation when rendering its dependency determination.

In finding Child dependent, the trial court stated the following:

> Father previously pleaded guilty in Dauphin County to aggravated assault, strangulation, and EWOC with [Child] as the victim. He subsequently was incarcerated and placed on probation.
>
> . . .
>
> Clear and convincing evidence was produced by [CYF] that [Father] has physically abused [Child] since he returned to [Father's] care. [CYF] documented and photographed several bruises and injuries to [Child's] face. [Father] and his two witnesses provided inconsistent testimony regarding the cause of the injuries. The court found the testimonies presented

- 13 -

by [Father], his mother, and his sister were not credible with regards to how [Child] sustained his injuries.

On the other hand, Dr. Crowell's testimony with regards to [Child's] injuries was credible. Her experience and credentials were unimpeachable. She had no reason, such as a personal involvement in the case, to be biased. She testified that the injuries most likely occurred by a malleable object such as a fist, and not by a stiff item. Dr. Crowell also testified that the injuries would have been painful for [Child]. Based on [Father's] prior attack on [Child], he and his witnesses' incredible testimony, and Dr. Crowell's credible testimony, the court clearly and convincingly found [Father] physically abused [Child]. It is this court's opinion that such physical abuse clearly and convincingly placed [Child's] health and welfare at risk. As such, the court believes that an adjudication of dependency was appropriate.

Trial Court Opinion (T.C.O.), 9/12/2023, at 17-18. Our review of the certified record reveals ample support for the trial court's conclusions.

The trial court heard testimony from Ms. Althoff and Father regarding Father's previous physical assault of Child that led to his incarceration. **See** N.T., 6/7/2023, at 17 ("That's when I discovered that [F]ather is actually an indicated perpetrator for physical abuse for strangulation and assault on the child."). Father attempted to minimize this incident on cross examination, as follows:

Q: Do you recall indicating to the caseworker that you were indicated for physical abuse of [Child] for hitting [C]hild with two fingers which accidentally left a mark?

A: Yes.

- 14 -

Q: Is that your testimony of how you ended up with aggravated assault charges?

A: Huh? Yes. They sat there, and that's what happened. What they have down on the paperwork is that **I smacked him and then grabbed him and I shook him**.

Q: Well, let's talk about that. What they have on the paperwork seems to indicate that [M]other had a video of that incident and that's how they know about it. Is that right?

A: **Yes, and I never denied that**. I ate my charges.

Q: You keep saying you ate your charges, but the fact of the matter is **you are on video doing those actions as described in the complaint, right?**

A: **Yes.**

Q: Okay.

A: I made a mistake.

Q: So when you told the caseworker that you hit [C]hild with two fingers, that was minimizing your previous behavior, right?

A: No. That's what happened. I was telling the truth.

*See id.* at 112-113 (emphasis added).

Due to this incident, Father was incarcerated and sentenced to probation upon release, which would end on December 2, 2025. *See* N.T., 6/7/2023, at 53. Father was required to attend, *inter alia*, batterer's intervention and anger management programs. *See id.* at 51. However, at the time of the June 7, 2023 hearing, Father had not attended either. *See id.* at 51. Officer

Baylor, Father's probation officer, confirmed that Father was not compliant with his probation. *See id.* at 52-56.

The court also heard testimony regarding injuries Child sustained while in Father's care. On direct examination, Dr. Crowell testified regarding Child's right orbital injury, as follows.

> Q: And can you describe the method by which [Child] would have sustained such an injury to his orbital?
>
> A: Sometimes when there's continuous injuries or injury to the skin, it can cause damage to the soft tissue beneath, like the fat, and you can have something called fat necrosis where that tissue changes and becomes firm like a nodule and can take some time to heal. When that happens, it feels hard and is mobile within the soft tissues of the skin, and that's what I think had occurred in [Child's] cheek or right around his eye on the right side.
>
> Q: And does that ever resolve? Will that eventually heal fully and be like it was before?
>
> A: It does, but that can take some time. Those cells have to shrink down, so that may be present for months.
>
> Q: Okay. Would that injury cause pain?
>
> A: Likely when it happened, and then again for some period of time after it healed.
>
> Q: What is an example of a mechanism by which that could have been sustained by [Child]?
>
> A: It requires some blunt force trauma to the skin that causes the tissues beneath to have blood leak out of the blood vessels and then cause injury to the soft tissue and fat cells.
>
> . . .

- 16 -

> Q: Okay. And is that injury to [Child's] orbital consistent with falling on any item, a coloring book, a toy, or something else?
>
> A: Typically when young children fall, there's one point of impact and you don't see injury that sort of wraps around the plane of the tissue such as we see around [Child's] orbital rim and then in photographs around the upper left eye and bridge of nose. So, no, I don't think that's consistent.

N.T., 7/17/2023, at 13-15. She further stated that "[w]e think about injury that sort of follows tissue planes, like around the eye[,] from getting hit or smacked or punched, some type of flexible object that can follow the curves of the tissue planes." *Id.* at 22. She concluded that Child "had been the victim of physical child abuse that had been repetitive." *Id.* at 16.

Father, his mother, and his sister also testified regarding Child's various injuries but each conflicted in their respective accounts of how the injuries occurred. Father insisted that the injury to Child's right orbital occurred when Child was climbing on a bin, slipped on a stack of magazines, and hit his face on the corner of a table. *See id.* a 104-105. Father also testified that an injury to Child's chin occurred when he fell running down a ramp at a family party and that an injury to the left side of Child's face occurred while Mother cared for Child. *See id.* at 106-108.

Father's mother confirmed that Child fell running down a ramp. *See* N.T., 7/19/2023, at 5. However, she claimed that this fall caused an injury to the left side of Child's face. *See id.* at 6. She further testified that, while in

her care, Child injured the bridge of his nose when a box fell on his face. *See id.* at 11. Father's sister witnessed the purported incident where Child slipped on magazines but stated that Child hit his cheek on a milk crate, not the side of a table. *See id.* at 19. She posited that this fall caused the injury to Child's left side of his face, not his right orbital. *See id.* She also witnessed Child fall while running down the ramp. *See id.* at 20-21. However, she testified that following the incident, she did not notice any marks or injuries but later found a mark around Child's right eyebrow. *See id.* at 21-22. Accordingly, the trial court was well within its discretion to find Father and his witnesses not credible.

Based upon Dr. Crowell's testimony and the incredible testimony of Father and his witnesses, the court found that Father was a perpetrator of physical abuse against Child pursuant to 23 Pa.C.S.A. § 6303(b.1)(1), as follows.

> [CYF] presented credible evidence from Dr. Crowell that [Child's] injuries were not accidental. She credibly told the court that the injury to [Child's] right orbital was not consistent with falling into the corner of a table because, due to the stiffness of materials used in tables, an injury stemming from a face-first fall into one would have had a different appearance. Rather, Dr. Crowell convinced this court that [Child's] bruise was most likely caused by being hit in the face by a flexible object such as a fist. She also preemptively disputed the claim that [Child's] other facial injury was caused by a falling box. . . . In Dr. Crowell's medical opinion, which the court found to be credible, [Child's] injuries were evidence of systematic and ongoing child abuse. The court believes [CYF]

adequately set forth prima facie evidence of physical abuse.

T.C.O., 9/12/2023, at 24-25.  The court further found that Father failed to sufficiently rebut the presumption of abuse due to the various inconsistencies in the testimony of Father, his sister, and his mother.  *See id* at 25-27.

Father confirmed that he was the primary caregiver of Child for approximately six months prior to Child's placement in foster care by CYF.[6]  *See* N.T., 7/17/2023, at 99.  As related *supra*, Dr. Crowell determined that the injury to Child's right orbital likely occurred "from getting hit or smacked or punched."  *Id.* at 22.   Although Dr. Crowell did not use the precise words "substantial pain," she stated that Child's orbital injury would likely be painful "when it happened, and then again for some period of time after it healed."  *Id.* at 14.  She further stated that Child's orbital injury could have "caused some pain with some activities," such as not wanting to lay on that side of his face while sleeping.  *Id.* at 15.

The trial court determined that the testimony provided was sufficient to find that Child experienced "substantial pain" pursuant to 23 Pa.C.S.A. § 6303(a). Accordingly, the trial court found that Child's right orbital injury was "of such a nature as would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent or other person responsible for

---

[6] Father testified that he left Child with his mother on one occasion, and rarely lets Child out of his sight.  *See* N.T., 7/17/2023, at 117-118.

the welfare of the child." 23 Pa.C.S.A. § 6381(d). Thus, CYF presented prima facie evidence of abuse and the burden shifted to Father to rebut the presumption. In finding Father and his witnesses' account of Child's injuries not credible, the trial court did not err in determining that Father failed to rebut the presumption of abuse. *See In re L.Z.*, 111 A.3d at 1185.

Separately, the trial court adjudicated Child dependent based on his dental issues, as follows.

> The court also reached an independent finding of dependency based on Child's tooth decay. The court heard testimony from Child's Foster Mother and his dentist regarding his extensive and painful tooth decay. Father did testify that he taught Child how to brush his teeth, which was inconsistent with Foster Mother's testimony that she had to teach Child how to do so. Whether Father taught Child how to brush is irrelevant. Child experienced sever tooth decay that affected nearly 70 percent of his teeth and no treatment was south or provided while he was in Father's care.
>
> The court does not believe that Child's severe dental issues occurred within the short period of time that he was in the foster family's care, as Father contends. This gross negligence regarding Child's dental hygiene clearly began while he was in Father's care, and maybe even Mother's care. Dr. Gilliam credibly testified that the severity of the decay was such that it could be seen by the naked eye. Foster Mother also testified that she could see the decay.
>
> . . .
>
> With regards to Child's dental hygiene, this court firmly believes that the evidence clearly and convincingly shows that [Child] was without proper parental care and control necessary for his physical health.

- 20 -

T.C.O., 9/12/2023, at 18-19 (cleaned up). Although Father contested whether the trial court could consider Child's dental issues when determining whether Child should be adjudicated dependent, he makes no argument on the factual findings made by the court which are supported by the record. Accordingly, we discern no error.

Based on the foregoing, the trial court did not err in adjudicating Child dependent and finding that Father was a perpetrator of "child abuse" pursuant to 23 Pa. C.S.A. § 6303(b.1)(1).

In his second issue, Father argues that the court erred in hearing evidence regarding aggravating factors before adjudicating Child dependent. *See* Father's Brief at 19. Despite his use of the term "aggravating circumstances" and "aggravating factors," Father essentially reargues his first issue, that the trial court erred by improperly considering Child's dental decay when determining whether Child should be adjudicated dependent because the allegation was not included in the original dependency petition. *See id.* Father further baldly asserts that "aggravating circumstances" were not raised in the dependency petition. *See id.* at 21. He asserts that *In the Interest of L.S.*, 289 A.3d 66 (Pa.Super. 2022) (unpublished memorandum) is instructive because in that case, the trial court held an adjudication hearing and then a disposition hearing "immediately following the adjudication" to determine whether aggravated circumstances had been established. *Id.*

Initially, along with its dependency petition, CYF filed a motion requesting that the court find the existence of aggravated circumstances as to Father.[7]  *See* Motion, 5/30/2023.  To the extent Father is, again, arguing that the trial court improperly considered Child's dental decay as a basis for dependency because the allegation was not raised in CYF's dependency petition and CYF did not file an amended petition to include this allegation, we discern no error.  On July 10, 2023, following the revelation that Child was suffering from extensive dental decay, CYF filed a motion to incorporate allegations of "serious physical neglect" pursuant to 23 Pa.C.S.A. § 6303(b.1)(7).  CYF did not incorporate Child's dental decay to establish aggravated circumstances, accordingly, Father's argument is without merit and his reference to *L.S.* is misplaced at best.

Regarding Father's fourth issue, whether the trial court erred in finding that Child was a victim of "child abuse" as a result of dental decay when the issue was not raised in the initial petition, "father believes that this issue, as raised in the 1925(b) statement, was properly decided by the [d]ependency [c]ourt."  Father's Brief at 26.  As Father appears to concede that the trial court correctly decided this issue and he does not set forth any further argument, we find this issue waived for failure to develop it.  *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa.Super. 2011).

_____

[7] CYF relied on Father's previous conviction to establish aggravated circumstances, as discussed further *infra*.

In his fifth issue, Father asserts that the trial court erred in not requiring CYF to provide services to Father due to its finding of aggravated circumstances. *See* Father's Brief at 28. Father concedes that his previous conviction forms an appropriate basis for aggravated circumstances but argues that he should have been provided an opportunity to show that he would comply with voluntary services. *See id.* at 28-29. He baldly asserts that he provided testimony to emulate that he is willing to do what is required to reunify with Child. *See id.* at 29.

The Juvenile Act provides that, if a trial court determines that a child is dependent, and aggravated circumstances have been alleged by the county agency or by the child's attorney, the court must also determine whether aggravated circumstances exist. *See* 42 Pa.C.S.A. § 6341(c.1). If the court determines that aggravated circumstances exist, the court must then consider whether reasonable efforts should be made to reunify the child with his or her parent or parents. *Id.* Following a finding of aggravated circumstances, a court may end reasonable efforts at its discretion. *See In re L.V.*, 127 A.3d 831, 839 (Pa.Super. 2015) (citing *In re A.H.*, 763 A.2d 873, 878 (Pa.Super. 2000)).

The Juvenile Act defines "aggravated circumstances" as follows, in relevant part.

> **"Aggravated circumstances." --** Any of the following circumstances:
>
> **. . .**

> **(3)** The parent of the child has been convicted of any of the following offenses where the victim was a child:
>
> **. . .**
>
> **(ii)** a felony under 18 Pa.C.S.[A.] § 2702 (relating to aggravated assault)….

42 Pa.C.S.A. § 6302(3)(ii).

As aptly stated by Father, the court determined that Father's prior conviction formed the basis for a finding of aggravated circumstances against him.[8]  In making its determination, the court stated that it "heavily weighed the fact that [Father has] a serious history of physically abusing [Child]." T.C.O., 9/12/2023, at 31.  The court also considered Father's failure to initiate services required by his probation until after the dependency hearings commenced.  ***See id.*** at 32.  The court did not find credible Father's excuses for not partaking in these mandatory services.  ***See id.***

We discern no error.  As related *supra*, the trial court determined, and our review of the record confirms, that Father was a perpetrator of "child abuse" against Child.  Father failed to engage services and the trial court was well within its discretion to order no reasonable efforts be made to reunify Child with Father.

---

[8] Father was convicted of three charges, including 18 Pa.C.S.A. § 2702(a)(8), *inter alia*.

Next, in his sixth issue, Father argues that the court erred in setting the goal as adoption without first attempting to implement services. *See* Father's Brief at 30. Father acknowledges that case law establishes that "'all family reunification may cease in the presence of a finding of aggravated circumstances.'" *Id.* (citing *In re M.S.*, 908 A.2d 612, 615 (Pa.Super. 2009). However, Father asserts that he had a loving relationship with Child and wishes to continue that relationship. *See* Father's Brief at 30.

The court opted to set Child's goal as adoption, with a concurrent goal of permanent legal custody of a non-relative, due to its finding of aggravated circumstances. The court reiterated its emphasis on Father's physical abuse of Child and his lack of engagement in batterer's intervention and anger management. *See* T.C.O., 9/12/2023, at 35-37. Pursuant to 42 Pa.C.S.A. § 6341(c.1), the trial court was well within its discretion to set Child's permanency goal as adoption.

In his final issue, Father argues that the court erred in ceasing his visitation with Child. *See* Father's Brief at 31. He argues that he has a positive relationship with Child that should be preserved. *See id.* at 32-33.

In dependency cases, where reunification remains the goal, this Court has stated that parental visitation of the child may not be denied or reduced unless it poses a grave threat to the child. *See In re C.J.*, 729 A.2d 89, 95 (Pa.Super. 1999). Where the permanency goal is no longer reunification, the court may suspend, limit, or deny visitation, if it is in the best interests of the

child to do so. ***See id.*** (stating, "[t]he 'best interests' standard, in this context, is less protective of parents' visitation rights than the 'grave threat' standard").

As the court set Child's goal to adoption, it had the discretion to deny Father continued visitation based on Child's best interests. The court again determined that Father's history of physical abuse against Child and its finding of "child abuse" in the instant case necessitated a cessation in visitation. As discussed *supra*, the court's findings are supported by the record. Thus, we determine no error.

Based on the foregoing, we conclude that none of Father's contentions entitle him to relief. Accordingly, we affirm the orders of the trial court.

Orders affirmed.

Judgment Entered.

_____

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/12/2024